# SICURELLA *v.* UNITED STATES.

No. 250.   Argued February 1, 1955.—Decided March 14, 1955.

*Hayden C. Covington* argued the cause and filed a brief for petitioner.

*John F. Davis* argued the cause for the United States. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Olney, Beatrice Rosenberg* and *J. F. Bishop.*

MR. JUSTICE CLARK delivered the opinion of the Court.

Petitioner was born in 1927 and was brought up as a Jehovah's Witness by his parents, both of whom were of that faith. He has been identified with the sect since he was 6 years old, "was immersed and became a consecrated servant of Jehovah" at 15, and was ordained when 17 years old. He registered with his local Board in 1948, and, although he worked 44 hours a week for the Railway Express Company, he was first classified as a minister. In 1950, however, petitioner was reclassified for general service and, shortly thereafter, he filed his conscientious objector claim.

In the special form, petitioner included this statement:

"The nature of my claim is that: I am already in the Army of Christ Jesus serving as a soldier of Jehovah's appointed Commander Jesus Christ. (2 Tim. 2:3 & 4). Inasmuch as the war weapons of

the soldier of Jesus Christ are not carnal, I am not authorized by his Commander to engage in carnal warfare of this world. (2 Corinthians 10:3 & 4, Ephesians 6:11–18) Furthermore being enlisted in the army of Jesus Christ, I cannot desert the forces of Jehovah to assume the obligations of a soldier in any army of this world without being guilty of desertion and suffering the punishment meted out to deserters by Almighty God. . . ."

In answer to the question, "Under what circumstances, if any, do you believe in the use of force," he wrote:

"Only in the interests of defending Kingdom Interests, our preaching work, our meetings, our fellow brethren and sisters and our property against attack. I (as well as all Jehovah's Witnesses) defend those when they are attacked and are forced to protect such interests and scripturally so. Because in doing so we do not arm ourselves or carry carnal weapons in anticipation of or in preparation for trouble or to meet threats. In doing so I try to ward off blows and attacks only in defense. I do not use weapons of warfare in defense of myself or the Kingdom interests. I do not retreat when attacked in my home or at meeting places, but will retreat on public or other property and shake the dust off my feet; so not giving what is holy to dogs and not throwing my pearls before swine. (Matthew 10:14 & 7:6) So I retreat when I can do so and avoid a fight or trouble. Also following the admonition at Acts 24:16; which states 'In this respect, indeed, I am exercising myself continually to have a consciousness of committing no offense against God and man.' "

Upon a denial of this claim by the local Board, petitioner appealed and his file was referred to the Department of Justice. It appears that the report of the Federal Bureau

of Investigation contained nothing unfavorable to petitioner's claim, and the hearing officer concluded that petitioner should be classified as a conscientious objector. In advising the Department of Justice, the hearing officer wrote that he "was convinced that [petitioner] has sincere objections to military service by reason of his religious training and beliefs." The Department of Justice, although admitting that the investigation was favorable to petitioner, recommended to the Appeal Board that petitioner's claim be denied on the ground that

> "While the registrant may be sincere in the beliefs he has expressed, he has, however, failed to establish that he is opposed to war in any form. As indicated by the statements on his SSS Form No. 150, registrant will fight under some circumstances, namely in defense of his ministry, Kingdom Interests, and in defense of his fellow brethren. He is, therefore, not entitled to exemption within the meaning of the Act."

The Appeal Board retained petitioner in his I–A classification, and thereafter, when duly ordered to report, he refused to submit to induction. This prosecution followed and the Seventh Circuit affirmed petitioner's conviction. 213 F. 2d 911. We granted certiorari. 348 U. S. 812.

In this case, unlike *Witmer, ante,* p. 375, it is admitted that petitioner is sincere; we are therefore relieved of the task of searching the record for basis in fact to support a finding of insincerity. The only question presented in this case is one of law—do the beliefs which petitioner says he holds amount to the conscientious opposition to "participation in war in any form" demanded by Congress as a prerequisite to the conscientious objector deferment?

Stated in the light of the background, the question at issue is whether a registrant under the Universal Military Training and Service Act, who is admittedly a sincere Jehovah's Witness and conscientious objector to participation in war, but who believes in the use of force in defending "his ministry, Kingdom interests and . . . his fellow brethren," is entitled to exemption under § 6 (j) of the Act from service in the armed forces. The Government insists that petitioner's statements reveal qualified and varied objection to war—and that "petitioner's willingness to fight in defense of 'Kingdom Interests', particularly when those words are considered in the light of the teachings of his sect, . . ." is clearly not opposition to war in any form.

The Government does not contend that the petitioner's belief in the use of force in self-defense, as well as the defense of his home, family and associates, is so inconsistent with his claim of conscientious objection as to serve as a basis for a denial of his claim.* The question here narrows to whether the willingness to use of force in defense of Kingdom interests and brethren is sufficiently inconsistent with petitioner's claim as to justify the conclusion that he fell short of being a conscientious objector. Throughout his selective service form, petitioner emphasized that the weapons of his warfare were spiritual, not carnal. He asserted that he was a soldier in the Army of Jesus Christ and that "the war weapons of the soldier of Jesus Christ are not carnal." With reference to the defense of his ministry, his brethren and Kingdom interests, he asserted that "we do not arm ourselves or carry carnal weapons . . . . I do not use weapons of warfare in defense . . . of Kingdom interests . . . ." In letters to

---

*In *United States* v. *Taffs,* in which we denied certiorari, 347 U. S. 928, the Government admitted as much in its petition. Its admission here does not extend to the category "brethren" which was not used in *Taffs.*

the local Board he reiterated these beliefs. On their face, these statements make it clear that petitioner's defense of "Kingdom Interests" has neither the bark nor the bite of war as we unfortunately know it today. It is difficult for us to believe that the Congress had in mind this type of activity when it said the thrust of conscientious objection must go to "participation in war in any form."

But the Government urges that these statements of petitioner must be taken in the light of the teachings of Jehovah's Witnesses. While each case must of necessity be based on the particular beliefs of the individual registrant, it is true that the Congress, by relating the registrant's conscientious objection to his religious training and belief, has made the belief of his sect relevant. Moreover, the petitioner does parenthetically say that his belief in the use of force was "as well . . . [the belief of] all Jehovah's Witnesses." On the other hand, though the Government has appended to its brief a copy of the Watchtower magazine of February 1, 1951, we do not find any such literature in the record. It is not at all clear that we may consider such material outside the record to support an Appeal Board decision, cf. *Cox* v. *United States*, 332 U. S. 442, 453–455 (1947), but we need not decide that here because in any event there is no substance to the Government's contention. Granting that these articles picture Jehovah's Witnesses as antipacifists, extolling the ancient wars of the Israelites and ready to engage in a "theocratic war" if Jehovah so commands them, and granting that the Jehovah's Witnesses will fight at Armageddon, we do not feel this is enough. The test is not whether the registrant is opposed to all war, but whether he is opposed, on religious grounds, to *participation* in war. As to theocratic war, petitioner's willingness to fight on the orders of Jehovah is tempered by the fact that, so far as we know, their history records

no such command since Biblical times and their theology does not appear to contemplate one in the future. And although the Jehovah's Witnesses may fight in the Armageddon, we are not able to stretch our imagination to the point of believing that the yardstick of the Congress includes within its measure such spiritual wars between the powers of good and evil where the Jehovah's Witnesses, if they participate, will do so without carnal weapons.

We believe that Congress had in mind real shooting wars when it referred to participation in war in any form—actual military conflicts between nations of the earth in our time—wars with bombs and bullets, tanks, planes and rockets. We believe the reasoning of the Government in denying petitioner's claim is so far removed from any possible congressional intent that it is erroneous as a matter of law.

The Court of Appeals also rested its decision on the conclusion that petitioner's objection to participation in war was only a facet of his real objection to all governmental authority. We believe, however, that if the requisite objection to participation in war exists, it makes no difference that a registrant also claims, on religious grounds, other exemptions which are not covered by the Act. Once he comes within § 6 (j), he does not forfeit its coverage because of his other beliefs which may extend beyond the exemption granted by Congress.

The Government also contends, apparently for the first time, that petitioner objects to "participation in war in any form," if in fact he does, not from a feeling that it is wrong to participate in war but because such participation will require time which petitioner feels should be devoted to his religious activities. In its memorandum indicating its lack of opposition to certiorari, the Government gave no hint that it considered such an issue in the case, and it is unnecessary for us to consider it here. The report

of the Department of Justice to the Appeal Board clearly bases its recommendation on petitioner's willingness to "fight under some circumstances, namely in defense of his ministry, Kingdom Interests, and in defense of his fellow brethren," and we feel that this error of law by the Department, to which the Appeal Board might naturally look for guidance on such questions, must vitiate the entire proceedings at least where it is not clear that the Board relied on some legitimate ground. Here, where it is impossible to determine on exactly which grounds the Appeal Board decided, the integrity of the Selective Service System demands, at least, that the Government not recommend illegal grounds. There is an impressive body of lower court cases taking this position and we believe that they state the correct rule. Cf. *United States ex rel. Levy* v. *Cain,* 149 F. 2d 338, 342 (C. A. 2d Cir. 1945); *United States* v. *Balogh,* 157 F. 2d 939, 943–944 (C. A. 2d Cir. 1946), judgment vacated on other grounds, 329 U. S. 692; *United States* v. *Everngam,* 102 F. Supp. 128 (S. D. W. Va. 1951).

The decision below is therefore

*Reversed.*

MR. JUSTICE REED, dissenting.

It is not important to the United States military strength that a few people eligible for military service are excused from combat and noncombatant duties as conscientious objectors. It is important to other American citizens that many without such scruples against war must serve while the few continue their assigned tasks with no exposure to danger greater than that of other civilians.

Many, by reason of religious training or moral conviction, may be opposed to certain wars declared by the Nation. But they must serve because they do not meet the test of the statute, "conscientiously opposed to participation in war in any form." The Court assumes that

Sicurella's conscience permits him to participate in theocratic wars, that is, those approved by Jehovah, such as the blood and flesh wars of the Israelites. Sicurella testified he would use force in defense of "Kingdom Interests." Those words also seem to me to include theocratic wars. Under the assumption of the Court and petitioner's statements, he is not covered by the statutory exemption. His position is inconsistent with his claimed opposition to war. I would require him to serve in the military service.

MR. JUSTICE MINTON, dissenting.

The findings and classification made by the Selective Service Board and the Appeal Board are final. 50 U. S. C. App. (1952 ed.) § 460 (b)(3). This Court does not sit as a court of review. It is not our province to substitute our judgment of the facts for that of the Board or to correct the Board's errors of law unless they are so wanton, arbitrary and capricious as to destroy the jurisdiction of the Board.

This Court said in *Estep* v. *United States*, 327 U. S. 114, at pp. 122–123:

> "The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final *even though they may be erroneous.* The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." (Emphasis added.)

In that case, Estep had claimed that his classification was made arbitrarily and capriciously. This is always a question of jurisdiction. Was the Board acting in wanton disregard of its legal boundaries? If it was not, but made what we might consider an honest mistake in judgment, this Court should not intervene.

In the instant case, the Court does not say that the Board acted capriciously and arbitrarily or that the judgment of the Board was not an allowable judgment of reasonable men. The Court states that a mistake in advice was made by the Department of Justice to the Appeal Board.

> "The report of the Department of Justice . . . clearly bases its recommendation on petitioner's willingness to 'fight under some circumstances, namely in defense of his ministry, Kingdom Interests, and in defense of his fellow brethren,' and we feel that this error of law by the Department, to which the Appeal Board might naturally look for guidance on such questions, must vitiate the entire proceedings . . . ."

It will be noted that the Court says there was error of law not by the Appeal Board but by the Department of Justice, whose recommendation is purely advisory and not binding upon the Appeal Board. 50 U. S. C. App. (1952 ed.) § 456 (j). The Court concludes that the Department of Justice committed an error of law by recommending to the Appeal Board that the petitioner be denied conscientious objector classification because of petitioner's willingness to "fight under some circumstances, namely in defense of his ministry, Kingdom Interests, and in defense of his fellow brethren." The record in this case clearly establishes that this was the position and attitude of the petitioner as a faithful Jehovah's Witness. Petitioner

says he is opposed to fighting a secular war but is not opposed to fighting a religious war where the interests of his sect are involved. This does not meet the test of the statute, 50 U. S. C. App. (1952 ed.) § 456 (j), which provides:

> "Nothing contained in this title [sections 451–454 and 455–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form."

The petitioner is not opposed to "participation in war in any form." That is the congressional test. On the contrary, he reserves the right to choose the wars in which he will fight. The petitioner refused even to be inducted for any kind of limited service, combatant or otherwise.

The Court's opinion gives the impression that the petitioner and his sect would not use force. In petitioner's own statement to the Board, he contradicts such a position. SSS Form No. 150, filled out by the petitioner and submitted to the Board, contains the following question and answer:

> "5. Under what circumstances, if any, do you believe in the use of force?
>
> "Only in the interests of defending Kingdom Interests, our preaching work, our meetings, our fellow brethren and sisters and our property against attack. I (as well as all Jehovah's Witnesses) defend those when they are attacked and are forced to protect such interests and scripturally so. Because in doing so we do not arm ourselves or carry carnal weapons in anticipation of or in preparation for trouble or to meet threats."

This answer clearly shows that the petitioner and his sect will fight for Kingdom Interests, whatever that is, preaching work, their meetings, their fellow brethren and sisters, and their property. They do not, they say, carry carnal weapons in anticipation of attack, but they will use them in case of attack. This evidence clearly supports the District Court's finding of guilt; and the conclusion of the Selective Service Board based on such evidence was an allowable one.

I think the Department of Justice might very well have believed petitioner did not meet the test laid down by Congress. By accepting the Department's recommendation, the Board might have been mistaken, but it was an honest mistake. There is not the slightest intimation of arbitrary or capricious conduct on the part of the Board.

Because we do not sit to review errors of fact or law unless the latter be so arbitrary and capricious as to destroy the Board's jurisdiction, and because I think the decision of the Appeal Board, even if the Board accepted and relied upon the recommendation of the Department of Justice, was an honest opinion and, therefore, an allowable judgment not arbitrarily and capriciously made, I would affirm.