Joe Ronald **KRETCHET**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 16260.

United States Court of Appeals
Ninth Circuit.

Dec. 1, 1960.

Barnes, Circuit Judge, dissented.

Hayden C. Covington, Brooklyn, N. Y., for appellant.

Laughlin E. Waters, U. S. Atty., Robert J. Jensen, Robert D. Hornbaker, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, BARNES and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Appellant was indicted for knowingly failing and refusing to be inducted into the armed forces of the United States as ordered by his local draft board, in violation of Title 50 Appendix, U.S.C.A. § 462.[1] Appellant waived trial by jury, and following a trial before the district court was found guilty of the offense charged, and thereafter was committed to the custody of the Attorney General of the United States for a period of three years.

Jurisdiction of the district court was invoked under the provisions of Title 18 U.S.C.A. § 3231 and Title 50 Appendix U.S.C.A. § 462. Jurisdiction of this Court to review the appeal from the judgment rests on the provisions of Title 28 U.S.C.A. §§ 1291 and 1294.

In appellant's brief filed October 26, 1959, the questions presented for review on this appeal are stated as follows:

I. Whether the denial of the claim for classification as a conscientious objector was without basis in fact, making a final I-A classification by the appeal board ar-

---

1. Title 50 Appendix, U.S.C.A. § 462 provides in relevant part as follows:

"(a) Any * * * person charged as herein provided with the duty of carrying out any of the provisions of this title [* * * sections 451–471 of this Appendix], or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty * * * shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment. * * *"

562

bitrary, capricious and without basis in fact;

II. Whether the Department of Justice denied appellant procedural due process in failing to supply to the appeal board and to the appellant a copy of the hearing officer's report by following the mandate of Section 1626.25 of the Selective Service Regulations (32 C.F.R. Section 1626.25), which is void because in conflict with the Universal Military and Training Act which, as enacted and re-enacted, approved and made a part of the law the ten-year-old regulation providing for the inclusion of the report in the Selective Service file;

III. Whether the appellant was illegally denied his right to have the use of the F.B.I. report upon the trial to test and determine whether the résumé of the F.B.I. report sent to the appeal board was illegal because it omitted favorable evidence appearing in the F.B.I. report that appellant was a bona fide conscientious objector, notwithstanding the report of the hearing officer and the recommendation of the Department of Justice.

The cause was orally argued before us on February 5, 1960, on which occasion we were advised that there was pending for decision before the Supreme Court of the United States on certiorari to the United States Court of Appeals for the Tenth Circuit the case of Gonzales v. United States, appearing in 269 F.2d 613, and that the decision when rendered in the Gonzales case might be controlling in reviewing points II and III presented on this appeal. The above cause was placed off calendar pending the decision of the Supreme Court in the Gonzales case. On June 27, 1960, the Supreme Court rendered its decision in the Gonzales case, and such decision is reported in 364 U.S. 59, 80 S.Ct. 1554, 4 L.Ed.2d 1569. After the decision in the Gonzales case the above cause was placed on the calendar for oral argument to be heard on October 3, 1960. On that occasion counsel for the appellant stated that contentions substantially the same as those advanced by appellant in points II and III of this appeal had been rejected by

the Supreme Court of the United States in the Gonzales case, and that he was no longer urging a review of such points on this appeal. We agree with counsel for the appellant that the opinion of the Supreme Court in the Gonzales case compels a disposition of points II and III of this appeal adversely to appellant's contentions. We will, therefore, give no further consideration to such contentions in this opinion.

We will now consider appellant's remaining contention which is set forth above under point I.

The record shows that appellant registered with his local draft board on February 9, 1953, shortly after having attained the age of 18 years. He filed the classification questionnaire called for by the regulations, in which he claimed to be a minister of Jehovah's Witnesses, and that he had been such since about December 1, 1952. He also claimed to be a conscientious objector. Shortly thereafter he returned to the local board a completed conscientious objector form, in which he claimed that he was, by reason of his religious training and belief, conscientiously opposed to participation in war in any form, and claimed exemption from both combatant and noncombatant service. On July 7, 1954 he was classified I-A. Thereafter, following a personal appearance before the board, he was reclassified I-A. From this classification he appealed to the appeal board, which referred the case to the Department of Justice for an inquiry and hearing. Following the hearing before a hearing officer before whom appellant personally appeared, the Department of Justice recommended to the appeal board that appellant's appeal be not sustained. In this report and recommendation the Department of Justice recited inquiry made by it and a résumé of the investigative report and summarized the oral hearing that appellant had before the hearing officer. The appeal board classified appellant I-A. Thereafter the local board reopened appellant's classification and reclassified him I-A. Following another personal appearance before the local

board the appellant's classification remained unchanged. He again appealed to the appeal board, which again referred the case to the Department of Justice. The Department of Justice recommended to the appeal board that appellant's appeal be not sustained. In this report and recommendation the Department of Justice recited its inquiry and a résumé of the investigative report and summarized the oral hearing that appellant had before the hearing officer. The appeal board classified appellant I-A. Appellant's request for a reopening of his classification by the local board was denied. Appellant was then ordered to take the physical examination. He was found to be acceptable for military service. He was thereafter ordered to report for induction into the armed forces. Appellant reported but refused to submit to induction, and the prosecution for violation of the provisions of Title 50 Appendix Section 462 followed.

The letters which the Department of Justice furnished to the appeal board and the résumés of its inquiries which are referred to therein allude to substantially all of the record which is relevant here.

In the closing paragraph of its first letter to the appeal board, the Department of Justice stated: "The Department of Justice has considered the résumé of the investigative report, the registrant's Selective Service file, the evidence adduced at the hearing, and the Hearing Officer's report and it finds that the registrant's objections to combatant and noncombatant service are not sustained. It is, therefore, recommended to your Board that the registrant's claim for exemption from both combatant and noncombatant training and service be not sustained." In the closing paragraph of the second letter to the appeal board it is stated: "The Department of Justice finds that the registrant's claim is not sustained. It is, therefore, recommended that the registrant's claim be not sustained by your Board." Since the basis for the recommendation in each instance does not appear in the paragraph containing the recommendation, we must look to other portions of each letter in order to determine the basis thereof.

A review of the reports and recommendation from the Department of Justice to the appeal board discloses that the recommendation of the Department of Justice was based on three grounds: First, that appellant's conversion to the teachings of Jehovah's Witnesses is not sincere; second, that appellant's conscientious objections are not based on religious training and belief; and, third, that appellant is not opposed to war in any form.

We need only consider the last ground.

In the conscientious objector form filed by the appellant, in response to the question, "Under what circumstances, if any, do you believe in the use of force?" appellant stated, "Yes, Under certain circumstances Jehovah's Witnesses will use bodily force. They may fight in the defence of their brothers. But, in all circumstances reason must be used as to how much force is necessary, and to get by with doing as little physical harm as is humanly possible." In the same form, in response to the question as to the name of the sect to which appellant belonged, he stated, "Jehovah's Witnesses. Watchtower Bible and Tract Society, 117 Adams St. Brooklyn 1, N.Y." He described the creed of said sect in relation to participation in war as follows: "We only follow the Bible. So, I will answer scripuly (sic) 2cor. 10:3,4. 'For Though we walk in the flesh, we do not war according to the flesh. For the weapons of our warfare are not of the flesh, but mighty before God to the casting down of strongholds.' (AS) Also being in the army of christ we cannot·desert the forces of Jehovah to join the Armys 'of this world.'" In appellant's first personal appearance before the local board he stated that "He is in Christ's Army now, and if he went into the Army, it would be treason." He further stated that he believed in self-defense under circumstances which are not premeditated, and that he had a right to protect his Christian brothers, and that he would fight to defend them in case of an emergency. In

his personal appearance before the first hearing officer of the Department of Justice appellant stated that he would defend his home against an invader; he would kill if it became necessary; and that he opposed noncombatant duty because he cannot serve two masters. In his second personal appearance before the local board, appellant stated that he never claimed to be against war in any form, that he believed in theocratic warfare commanded by God, and unless God told him to fight there was no reason to fight. In appellant's appearance before the hearing officer on his second appeal he filed a letter in which he stated, "I believe that the Bible does not allow me to participate in any war that is being fought at the present or will ever be fought at any time in the future. I am conscientiously opposed to participation of war in any form. I will not participate in any battle in which carnal weapons are used and lives are lost. Yet, I do not claim to be a pacifist." At the time of such personal appearance before the hearing officer appellant indicated that if Jehovah, or someone believed to be speaking for Jehovah, ordered him to slay now or to participate in a war now, he would participate in such a war and that in such participation he would use such carnal weapons as were available to him in order to carry out Jehovah's commandments. We have found nothing else in the record relevant to appellant's views on participation in war.

Inasmuch as the adverse recommendation of the Department of Justice is simply a general statement that the appellant's claim for exemption be not sustained by the appeal board, the appeal board was required to ferret out the reasons or grounds for such recommendation from the material contained in or referred to in the letter from the Department of Justice and the attached documents. In the first letter from the Department of Justice appears the following:

"The Hearing Officer was of the opinion that the registrant is a very sincere young man who conscientiously believes that he has found the true religion and that his religious activities have done him an unusual amount of good. The Hearing Officer found the registrant to be a studious type of person, a serious thinker, and a person who is considerate of his fellow man. The Hearing Officer reported that due to the obvious good the registrant's religion has brought him and because of the very sincere and thoughtful way in which the registrant approaches all of his problems and decisions, he, the Hearing Officer found his decision in the matter to be very difficult. The Hearing Officer reported, however, *that it cannot be said in this instance that the registrant is opposed to war in any form.* The Hearing Officer also concluded that the registrant's conscientious objections are not based on religious training and beliefs. Accordingly, the Hearing Officer recommended that the registrant's claim be not sustained." (Italics ours).

In the second letter of the Department of Justice to the appeal board appears the following:

"The Hearing Officer reported that registrant's criminal record seems to have ceased as of the time of his baptism, but that his lack of activity within his church has led the Hearing Officer to conclude that registrant's conversion is not entirely sincere. He also concluded that registrant *is not opposed to war in any form;* that his conscientious objections are not based upon religious training and belief; and, that his claim is not made in good faith. Accordingly, the Hearing Officer recommended that the registrant's claim be not sustained." (Italics ours).

The conclusions of the hearing officers "that registrant is not opposed to war in any form" must, of necessity, have been based upon the views expressed by appellant concerning participation in war and which we have summarized in the

preceding paragraph. We are constrained to believe that the general adverse recommendation of the Department of Justice relied upon and adopted the conclusions reached by the hearing officers.

Viewing the record in this case insofar as it relates to appellant's views on participation in war, in the light of the teachings in Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436, we are of the opinion that there is no basis in fact or law for the conclusion that appellant is not opposed to war in any form. The views expressed by appellant on participation in war are essentially the same as the views expressed by Sicurella. In Sicurella it is stated at page 390 of 348 U.S., at page 406 of 75 S.Ct.:

"The test is not whether the registrant is opposed to all war, but whether he is opposed, on religious grounds, to *participation* in war. As to theocratic war, petitioner's willingness to fight on the orders of Jehovah is tempered by the fact that, so far as we know, their history records no such command since Biblical times and their theology does not appear to contemplate one in the future. And although the Jehovah's Witnesses may fight in the Armageddon, we are not able to stretch our imagination to the point of believing that the yardstick of the Congress includes within its measure such spiritual wars between the powers of good and evil where the Jehovah's Witnesses, if they participate, will do so without carnal weapons.

"We believe that Congress had in mind real shooting wars when it referred to participation in war in any form—actual military conflicts between nations of the earth in our time—wars with bombs and bullets, tanks, planes and rockets. We believe the reasoning of the Government in denying petitioner's claim is so far removed from any possible congressional intent that it is erroneous as a matter of law.

"The Court of Appeals also rested its decision on the conclusion that petitioner's objection to participation in war was only a facet of his real objection to all governmental authority. We believe, however, that if the requisite objection to participation in war exists, it makes no difference that a registrant also claims, on religious grounds, other exemptions which are not covered by the Act. Once he comes within § 6(j), he does not forfeit its coverage because of his other beliefs which may extend beyond the exemption granted by Congress."

We are unable to determine from the record whether the board, in refusing to sustain appellant's claim for exemption, did so because of appellant's lack of sincerity, or because it believed that appellant's conscientious objections were not based upon religious training and belief, or because appellant was not opposed to war in any form, or whether such action was based upon all three grounds, or on two of them. The advice given by the Department of Justice to the appeal board that it could refuse to sustain appellant's claim for exemption on the ground that he was not opposed to war in any form, in our view, was clearly erroneous and fatally infected the adverse recommendation of the Department of Justice. The situation here is similar to the one in the Sicurella case. On this point the Supreme Court in Sicurella stated, commencing at page 391 of 348 U.S., at page 406 of 75 S.Ct., as follows:

"The report of the Department of Justice to the Appeal Board clearly bases its recommendation on petitioner's willingness to 'fight under some circumstances, namely in defense of his ministry, Kingdom Interests, and in defense of his fellow brethren,' and we feel that this error of law by the Department, to which the Appeal Board might naturally look for guidance on such questions,

must vitiate the entire proceedings at least where it is not clear that the Board relied on some legitimate ground. Here, where it is impossible to determine on exactly which grounds the Appeal Board decided, the integrity of the Selective Service System demands, at least, that the Government not recommend illegal grounds. There is an impressive body of lower court cases taking this position and we believe that they state the correct rule. Cf. United States ex rel. Levy v. Cain, 149 F.2d 338, 342 (C.A. 2d Cir. 1945); United States v. Balogh, 157 F.2d 939, 943–944 (C.A. 2d Cir. 1946), judgment vacated on other grounds, 329 U.S. 692 [67 S.Ct. 625, 91 L.Ed. 605]; United States v. Everngam, 102 F.Supp. 128 ([D.C.] S.D.W.Va. 1951)."

On this point see also the opinion of this Court in Shepherd v. United States, 9 Cir., 1954, 217 F.2d 942.

■ For the reasons above stated, it is our conclusion that appellant's classification as I-A and his induction order are, and each of them is, invalid. It was encumbent upon the United States to prove a valid induction order as a basis for appellant's conviction.

The precise reasons for invalidity of the order which we have here discussed were not developed in appellant's brief, but were called to our attention on oral argument. We are of the view that the conviction in this case under the circumstances here presented constitutes plain error within the meaning of Rule 52(b) of the Rules of Criminal Procedure, 18 U.S.C.A. As such error affects the substantial rights of appellant, we hold that the judgment must be and is reversed.

BARNES, Circuit Judge.

I dissent.

I fully agree with Judge JERTBERG that we need not reach the second and third grounds originally urged by appellant, and decided adversely to him by the Supreme Court in Gonzales v. United States, 364 U.S. 59, 80 S.Ct. 1554, 4 L.Ed.

2d 1569 (decided June 27, 1960). I further fully agree with Judge JERTBERG in his splendid analysis of the record here presented, and his conclusion that the adverse recommendation of the Department of Justice rests on the three grounds he lists at page 563 of 284 F.2d. He then relies on Sicurella v. United States, 1955, 348 U.S. 385, 75 S. Ct. 403, 99 L.Ed. 436 to reverse, and it is there we part company. In Sicurella, the Supreme Court ruled that because Sicurella was admittedly sincere, although he was ready to engage in a "theocratic war" if Jehovah so commanded, he was still entitled to classification as a conscientious objector, and it was an error at law for the Department of Justice to classify him otherwise.

But this Kretchet case does not reveal similar facts, or beliefs. In Sicurella, supra, the draft registrant categorically rejected the use of carnal weapons *under any circumstances:*

"With reference to the defense of his ministry, his brethren and Kingdom interests, he asserted that 'we do not arm ourselves or carry carnal weapons * * *. I do not use weapons of warfare in defense * * * of Kingdom interests * * *.'" Id., 348 U.S. at page 389, 75 S.Ct. at page 405.

The Supreme Court in Sicurella rejected the government's contention therein made, that such a willingness to fight a "theocratic war" was not "opposition to war in any form." Id., 348 U.S. at page 389, 75 S.Ct. at page 405. Thus, a belief in such "theocratic warfare" does not exclude one from the statutory exemption for those opposed on religious grounds to participation in "carnal warfare." But the theocratic warfare of which the Supreme Court was speaking was a spiritual war "between * * * good and evil where the Jehovah's Witnesses, if they participate, will do so without carnal weapons." Id., 348 U.S. at page 391, 75 S.Ct. at page 406.

Kretchet's refusal here to disavow categorically the use of carnal weapons of warfare indicates that his concept of

spiritual warfare is quite different than that which the Supreme Court had in mind in the Sicurella case. And, importantly, it directly raises the very question of sincerity, which existed in Sicurella, supra, and which did not exist in Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428, decided the same day as the Sicurella case. In conscientious objector cases, "the ultimate question * * * is the sincerity of the registrant in objecting, on religious grounds, to participation in war *in any form.*" Witmer, supra, 348 U.S. at page 381, 75 S.Ct. at page 396.

Thus I find Witmer rather than Sicurella controlling on the facts of this case, and I would affirm.