UNITED STATES of America,
Appellee,

v.

George Martin VLASITS, Appellant.

No. 12852.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 2, 1969.

Decided March 2, 1970.

Kristin Booth Glen, New York City (Michael B. Standard and Rabinowitz, Boudin & Standard, New York City, on brief) for appellant.

W. Arnold Smith, Asst. U. S. Atty. (Robert H. Cowen, U. S. Atty., on brief) for appellee.

Before BRYAN, CRAVEN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge.

George Martin Vlasits was sentenced to five years imprisonment for refusal to submit to induction in violation of 50 U.S.C.App. § 462. We reverse because there was no basis in fact for his I–A classification.*

Vlasits graduated from college in June 1964 and was promptly reclassified from II–S to I–A. In September 1964, after he submitted proof he had contracted to teach public school, he was granted a II–A occupational deferment. He retained his II–A classification until he

---

* Vlasits also urges alternative grounds for reversal which, in the light of our decision, we find it unnecessary to consider.

stopped teaching in June 1966, when he requested a II–S classification while he attended graduate school. The board refused his request and classified him I–A. Vlasits sought and was granted a personal appearance and an appeal, but his I–A classification was continued.

Vlasits was ordered to report for induction on January 4, 1967, but this order was canceled and he was classified I–S(C) until June 1967 to permit him to complete the academic year at graduate school. On April 24, 1967 Vlasits requested the special form for conscientious objectors, which he executed and returned to the board. However, on June 7, 1967 the board rejected his conscientious objector claim and classified him I–A. Vlasits requested and received a personal appearance and an appeal to the state appeals board, but his I–A classification was continued.

On February 20, 1968 Vlasits refused to submit to induction. Prosecution, conviction, and this appeal followed.

■ Whether there is a basis in fact for Vlasits' I–A classification depends on the validity of his claim that he is a conscientious objector. To establish this status, a registrant must prove that he is conscientiously opposed to participation in war in any form, and that his opposition results from his religious training and belief and not from essentially political, sociological or philosophical views or a merely personal code. 50 U.S.C. App. § 456(j). The board may deny his application because he fails to satisfy the statute's requirements or because his beliefs, although apparently compatible with the statute, are not sincere. See United States v. Bornemann, 424 F.2d 1343, (2d Cir. 1970).

As a result of Vlasits' personal appearance on July 19, 1967, when he was questioned at length, the following notation, initialed by the clerk, was placed in his file:

"Attending school U of NC was considered for defer to finish has not religious claim now has been in early

teens Lutheran then switched to Congregational not practicing now believes that its not human to take arms supplied letters to confirm his belief."

The notation is not cast in formal terms, but it indicates that the board decided Vlasits was not entitled to classification as a conscientious objector because his claim was not based on religious training and belief as required by the statute.

United States v. Seeger, 380 U.S. 163, 176, 85 S.Ct. 850, 859, 13 L.Ed.2d 733 (1965), provides the standard to determine whether Vlasits' beliefs qualified him as a conscientious objector:

"The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition."

We turn then to Vlasits' selective service file for an examination of his views.

Vlasits wrote in his application for classification as a conscientious objector that although he had been baptized as a Lutheran and received confirmation in the Congregational church, he did not currently consider himself a member of a formal religious organization. He disclaimed any pretension that his beliefs were "congruent with the formal creeds" of these churches, but he asserted that his religious training contributed to "his humanistic philosophy and belief in a higher moral law than that of man." In a lengthy exposition he wrote in part:

"My beliefs center on the existence of a set of moral laws or principles which prescribe and proscribe the nature of one's justifiable relationship to his fellow man. These beliefs can best be summarized by saying that every person has the moral obligation to act towards others in a way which will not bring harm to them or that an individual has a responsibility beyond that to himself (and to his government) to respect and promote the rights of all human beings. Translat-

ed into practical considerations, this belief forbids the taking of a human life since *all other rights are dependent on the right to life*. Any participation in the Armed Services (whether in combatant or non-combatant status) thereby violates these principles in that the ultimate purpose of the Armed Services involves the taking of human lives. Furthermore, participation in the Armed Services promotes the illegitimate use of force or violence · * * * to which I am also opposed on the basis of my beliefs.

\* \* \* \* \* \*

"[T]hese beliefs roughly parallel those about the Christian God which were part of my early religious training. However 'instead of positing a personal God, whose existence man can neither prove nor disprove, (my) ethical concept is founded on human experience.' (David Mussey, Ethics as a Religion) It is a humanistic belief in a superior moral and ethical code which is of and yet above man.

"These beliefs do involve a duty which is superior to those arising from any human relation."

Nothing in Vlasits' selective service file contradicts this expression of his convictions. Moreover, as the board noted, his beliefs were confirmed by letters from a number of people. Among those who wrote was a Jesuit priest from Chapel Hill, North Carolina, who unhesitatingly described Vlasits' beliefs as religious:

"I find him to be honest and direct, both in his daily life and in his important decisions, such as this one concerning the draft. His religious convictions, though holding a rather impersonal viewpoint on God, still arise from a religious well, and spring forth to water the ground of moral action, in a similar way as my own convictions influence my life."

■ There can be no doubt that Vlasits' beliefs satisfy the statute. They occupy in his life the same place "as an orthodox belief in God holds in the life

of one clearly qualified for exemption." United States v. Seeger, 380 U.S. 163, 184, 85 S.Ct. 850, 863 (1965). Cf. United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir.1969). Since Vlasits' classification resulted from the board's erroneous interpretation of the statute granting the exemption, the government is precluded from urging affirmance on other grounds. Sicurella v. United States, 348 U.S. 385, 392, 75 S.Ct. 403, 99 L.Ed. 436 (1955); Gatchell v. United States, 378 F.2d 287, 292 (9th Cir.1967).

Reversed.