UNITED STATES of America ex rel.
Morse Fredric STEIN, Petitioner,

v.

Major Roland G. GILLEN et al.,
Respondents.

No. 71 C 1406.

United States District Court,
N. D. Illinois, E. D.

Sept. 24, 1971.

George C. Pontikes, Foss, Schuman &
Drake, Chicago, Ill., for petitioner.

William J. Bauer, U. S. Atty., for respondents.

DECISION

McMILLEN, District Judge.

Petitioner seeks a writ of habeas corpus on the ground that he was inducted into the armed forces after his claim for conscientious objector status was improperly rejected. He contends (a) that his local Selective Service Board in New York and the Appeal Board in Illinois failed to classify him I–O (as a conscientious objector), although the evi-

dence adduced by him warranted this, (b) that both Boards failed to give legally valid reasons for denying his claim, and (c) that there was no basis in fact for classifying him I–A.

Respondents, in response to a motion for a rule to show cause, filed an Answer in the form of a legal memorandum. Therefore the Petitioner's entire Selective Service file is in the record without any dispute as to the facts or the authenticity of the documents.

Petitioner was originally classified II–S on October 14, 1965, being a student at Antioch College. He graduated in 1970 and, when ordered to report for physical examination on February 25, 1970, submitted statements of two doctors that he was suffering from certain allergies. Notwithstanding, he was found medically and morally fit for induction when examined on July 13, 1970, and he then asked for a personal appearance before the Board. This request was granted for September 15, 1970, and then postponed on the basis of Petitioner's request dated August 29 for SSS Form 150, seeking a I–O classification. He filed the form on October 1 and on October 15, 1970 was granted a personal appearance before his Board. His I–O application was denied on the date of his appearance. He filed a timely administrative appeal and requested transfer to the Illinois State Appeal Board, since he was then living in Chicago. On February 9, 1971, the Illinois Board affirmed the denial of an I–O status and Petitioner was inducted into the armed forces on June 11, 1971.

By various court orders and agreements of the parties, the Petitioner has been temporarily relieved of any military duties pending decision on his petition. The government has voluntarily submitted the necessary defendants to this court's jurisdiction so that we may grant the writ and discharge Petitioner from the army if justified. The court has concluded that the Petition should be denied and dismissed.

▌ The first step is to define this court's power to review the actions of the local Board and of the Appeal Board. It is clear that this jurisdiction is very narrow and that we cannot review either Board's selection of the facts upon which it based a classification. In Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), as quoted in United States v. Seeger, 380 U.S. 163 at 185, 85 S.Ct. 850, 864, 13 L.Ed.2d 733 (1965), the Court said:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

The nature of this review has been somewhat refined, at least in I–O cases, by United States v. Lemmens, 430 F.2d 619 (C.A. 7, 1970) and U. S. ex rel. Sielen v. Hocking, (C.A. 7, #18,721, May 6, 1971). The rule laid down by these cases is that the classification must be based upon facts of "minimal probative value" if Petitioner has made out a *prima facie* case to the contrary, and the Board must state the basis for its decision with sufficient specificity so that a court can ascertain whether the decision was based on a valid or invalid reason.

▌ From an examination of the file in this case it may be assumed, *arguendo*, that Petitioner made out a *prima facie* claim of I–O classification pursuant to Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). He admittedly based his Form SSS 150 statements on that decision and had advice

of counsel in doing so. Nevertheless the Board acted properly, within the requirements of *Lemmens* and *Sielen*, (supra) in denying the claim.

The local Board had the benefit of Petitioner's articulately worded statements on SSS Form 150, consisting of several typewritten pages, supported by letters from his mother, wife, father-in-law (a Federal Judge) and a rabbi. Additional letters from a former teacher and a college classmate were also filed, along with a six-page summarization of the Board's personal interview with the Petitioner and his father held on October 15, 1970. On the date of this interview the Board filled out N. Y. State Headquarters SSS Form 7 (which form was revised on May 1, 1970, before *Welsh*). Part of this printed form reads as follows:

( ) 1. It is the local board's opinion that registrant is not a genuine conscientious objector.

Explain: ————————————

After these words of the form the Board inserted:

Registrant has failed to show that moral & ethical convictions have directed his life in the way traditional religious convictions of equal strength, depth, and duration have directed the lives of those whose beliefs are clearly founded in traditional religious conviction. Expediency.

It seems to this court that the local Board has done an admirable job of applying the *Welsh* test in denying the application, with the possible exception of the word "Expediency." The Board in essence said:

" * * * the central consideration in determining whether the registrant's beliefs are religious is whether these beliefs play the role of a religion and function as a religion in the registrant's life." [Welsh v. United States, 398 U.S. at p. 339, 90 S.Ct. at p. 1796].

It answered this question in the negative, whereas the Court of Appeals and Su-

preme Court had answered it in the affirmative in *Welsh*.

The addition of the word "Expediency" was unnecessary in view of the Board's words preceding it, but it adds a second perfectly valid basis for the decision. The Supreme Court also said in *Welsh*, 398 U.S. at pp. 342–343, 90 S.Ct. at p. 1798:

We certainly do not think that § 6(j)'s exclusion of those persons with "essentially political, sociological, or philosophical views or a merely personal moral code" should be read to exclude those who hold strong beliefs about our domestic and foreign affairs or even those whose conscientious objection to participation in all wars is founded to a substantial extent upon considerations of public policy. The two groups of registrants that obviously do fall within these exclusions from the exemption are those whose beliefs are not deeply held and those whose objection to war does not rest at all upon moral, ethical, or religious principle but instead rests solely upon considerations of policy, pragmatism, or expediency.

Petitioner, by adopting the *Welsh* thesis, does not claim a theocratic basis for his classification but rather a moralistic and ethical one, as strong as the traditional religious objection to all wars. The local Board could well have found this degree of intensity lacking in Petitioner's Form SSS 150. For example, he wrote on page 3 thereof:

I have also written directly to my representatives in Washington supporting legislation which would bring an honorable end to the war.

An "honorable end" implies something more to this court than total renunciation. Petitioner also declined to disavow the Jewish wars of religion, the American Revolutionary War or our response to an attack in World War II. It is difficult to disagree with the moral and social philosophy expressed in many portions of Petitioner's written statement, but it

is also difficult to see how this philosophy has been elevated to the fervor or dedication of a religion in Petitioner's life. Neither Petitioner's father nor his wife say so, in supporting his application, and the letters of his mother, classmate, and father-in-law are open to inferences either way.

But a more detailed recital from the documents in the Board's file is not particularly profitable, since printed words can be interpreted differently by different readers when they are used to express the elusive and often subjective state of mind required by *Welsh* and its predecessor, United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Equally significant is the fact that the local Board heard the Petitioner in person and had the unique advantage of determining the integrity of his convictions from personal observation. What the Board's conclusions were from this confrontation were not specified, except as contained in its general decision quoted above, but a better way of weighing convictions cannot be imagined. In fact a personal appearance would seem to be a *sine qua non* of applying the *Welsh* test, and the result is well-nigh unreviewable. Unless it appears, therefore, that the Board improperly applied the law, its I–A classification must stand.

■ This is not a case where the Board failed to state any basis for its decision as in United States v. Lemmens, *supra,* nor is it a case where the Board selected several grounds, some of which were improper, as in Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955), and Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971). This is a case where the Board based its determination on two closely related grounds, both of which were legally valid and both of which are supported by its record.

At Petitioner's request, his appeal was transferred to Illinois and the state Appeal Board decided against him solely on the record received from the local Board.

Whether a mistake by the Appeal Board would justify the issuance of a writ of habeas corpus where the local Board had decided the matter within the law has not been determined by any cases cited by the parties. It would seem logical that, if the local Board was correct, this should be the end of it insofar as judicial review is concerned, unless due process was not followed or unless additional matters were presented in the appeal. The Petitioner does not claim lack of due process but does claim that the Appeal Board likewise failed to give a proper reason for its decision.

The Illinois Appeal Board, in declining to change the classification, used a form which, including typographical errors, read as follows:

Feb. 9, 1971

\* \* \*

The appeal board finds that the claim of this registrant is not sincere and that the basis for this finding is:

(Use one or more of the following)

| | | |
|---|---|---|
| A. | Lateness of claim | √ |
| B. | Convictions not deeply held | √ |
| C. | Absence of evidence of religous training | |
| D. | Claim is frivilous in effort to dealy [delay?] | |
| E. | Primarily (Use one or more) | |
| | 1. Philosophical | √ |
| | 2. Sociological | |
| | 3. Political | |
| | 4. Or merely a personal moral code | √ |
| F. | Based on a particular war | |
| G. | Any other reasons for doubt: | |

[Signature]

■ It appears from the foregoing that the Appeal Board based its determination on the valid ground of "insincerity," as authorized by United States ex rel. Sielen v. Hocking, *supra,* and Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). This finding, in the court's opinion is substantially the equivalent of the local Board's word "Expediency." The deter-

mination of lack of sincerity was amplified by the specific deficiencies noted. From what has been said with respect to the local Board's decision, it follows that there is factual support for the Appeal Board's finding and specifications.

■■ The "lateness" conclusion, added by the Illinois Board, is adequately supported by the facts set forth in the third paragraph of this decision, especially when contrasted with Petitioner's statement that he "thought about" his aversion to war as early as 1965, and apparently had held most of his philosophical and moral views through his college career. Although lateness does not constitute an independent ground for denying I–O classification, it is a proper consideration when accompanied by others. See Ehlert v. United States, 402 U.S. 99 at 102–103, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971). Therefore, such cases as *Sicurella* and *Clay, supra,* are no more applicable to the Appeal Board decision than they were to the local Board's.

■ It may be significant, in addition to the foregoing bases for this court's decision, that the Petitioner by this writ is seeking to set aside the classification of the Selective Service System, as distinguished from a conviction of a crime. If a conviction is set aside because of a mistake of law, as in *Sicurella* and *Clay,* the registrant may still be subject to a I–A classification. In the case at bar, however, the Petitioner's final classification is at issue and, if a writ is granted, he will no longer be subject to further classification. It would seem that the proceedings of the Selective Service System are entitled to greater integrity in this situation than where the applicant must be proved guilty of a crime beyond a reasonable doubt. C. f. Gruca v. Secretary of Army, 436 F. 2d 239 (C.A.D.C.1970), cert. den., 401 U.S. 978, 91 S.Ct. 1207, 28 L.Ed.2d 328 (March 22, 1971).