**Bernard Gerard RAFFERTY, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 72–3819**

**Summary Calendar.**\*

United States Court of Appeals, Fifth Circuit.

May 4, 1973.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

**532**

Gerald H. Goldstein, San Antonio, Tex., for petitioner-appellant.

William S. Sessions, U. S. Atty., Edward M. Johnson, Asst. U. S. Atty., San Antonio, Tex., Donald H. Feige, Atty., John L. Murphy, Chief, Dept. of Justice, Crim. Div., Washington, D. C., for respondent-appellee.

Before BELL, GODBOLD and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Appellant Rafferty, an Irish national and an ordained Roman Catholic priest, had been admitted to the United States as a permanent resident in 1965. He left the active ministry in 1970 and has been gainfully employed as a carpenter in San Antonio. In February of 1971, Rafferty filed a petition for naturalization. He was afforded a preliminary examination, at which time he indicated a desire to take a qualified oath of allegiance to the United States as permitted by the Immigration and Nationality Act, 8 U.S.C. § 1448:

Oath of renunciation and allegiance

(a) A person who has petitioned for naturalization shall, in order to be and before being admitted to citizenship, take in open court an oath (1) to support the Constitution of the United States; (2) to renounce and abjure absolutely and entirely all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which the petitioner was before a subject or citizen; (3) to support and defend the Constitution and the laws of the United States against all enemies, foreign and domestic; (4) to bear true faith and allegiance to the same; and (5) (A) to bear arms on behalf of the United States when required by the law, or (B) to perform noncombatant service in the Armed Forces of the United States when required by the law, or (C) to perform work of national importance under civilian direction when required by the law. Any such person shall be required to take an oath containing the substance of clauses (1) to (5) of the preceding sentence, except that a person who shows by clear and convincing evidence to the satisfaction of the naturalization court that he is opposed to the bearing of arms in the Armed Forces of the United States by reason of religious training and belief shall be required to

take an oath containing the substance of clauses (1) to (4) and clauses (5) (B) and 5(C) of this subsection, and a person who shows by clear and convincing evidence to the satisfaction of the naturalization court that he is opposed to any type of service in the Armed Forces of the United States by reason of religious training and belief shall be required to take an oath containing the substance of said clauses (1) to (4) and clause (5)(C). The term "religious training and belief" as used in this section shall mean an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code.

Specifically, Rafferty was opposed to the taking of that portion of the oath which requires him to bear arms on behalf of the United States. He asserted that his opposition was an outgrowth of his religious training and belief and was independent of the tenets of the Roman Catholic Church.

Subsequent to the interview the Naturalization Examiner entered the following findings of fact:

(a) That the petitioner is a lawfully admitted alien for permanent residence and filed a petition for naturalization on February 2, 1971;

(b) That the petitioner is not willing to bear arms on behalf of the United States when required by the law;

(c) That the petitioner is an ordained Catholic priest and is no longer in the active ministry. He is a non-practicing Roman Catholic, and

(d) That the petitioner's refusal to bear arms on behalf of the United States is based on his religious training and belief.

The examiner recommended that the naturalization court allow Rafferty to take the qualified oath, and further re-

quested that the petition for naturalization be granted.

The district judge upon hearing the petition determined that Rafferty's views did not bring him within the scope of the exception to the unqualified oath. A review of the transcript of the proceedings indicates to us that the court employed an erroneous legal criterion in arriving at its conclusion.

After questioning Rafferty's membership in the Roman Catholic Church, the district judge formulated his basis for denying the petition as follows:

"Well, Mr. Rafferty, as you said a moment ago, as the Court knows, the Catholic Church does not have any scrupples against the bearing of arms and does not prohibit it, and therefore the Court finds that you failed to show the Court by clear and convincing evidence to the satisfaction of this Court that you are opposed to the bearing of arms by reason of your religious training and beliefs, and it is more of a personal moral code. The Court will deny your petition for naturalization."

Our interpretation of religious training and belief as it appears in § 1448 of the Immigration and Naturalization Act is guided by the Supreme Court's construction of similar language contained in § 6(j) of the Universal Military Training and Service Act, 50 U.S.C.App. § 456. In re Thomsen, 324 F.Supp. 1205 (N.D.Ga., 1971); In re Weitzman, 426 F.2d 439 (8th Cir., 1970).

We therefore hold that the proper test to be applied in determining whether a petitioner for naturalization is to be permitted to take the qualified oath of allegiance to the United States is the religious parallel test as advanced by the Supreme Court in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). The question to be answered is whether or not an individual's opposition to the bearing of arms stems from his moral, ethical or

religious beliefs about what is right and wrong, and whether or not these beliefs are held with strength of traditional religious convictions.

 Rather than applying a subjective test in the case at hand, the district court erroneously used the tenets of the Roman Catholic Church as a touchstone against which Rafferty's beliefs were tested. We therefore must reverse the order denying the petition and remand the case for a redetermination in accordance with the guidelines of *Seeger* and *Welsh, supra.*

During the course of the hearing the district judge questioned Rafferty as follows:

"THE COURT:

Are you married?

"MR. RAFFERTY:

Yes, sir, I am.

"THE COURT:

Do you have a child?

"MR. RAFFERTY:

Yes, sir, I do.

"THE COURT:

If someone came into your house and attempted to kill your wife or child, would you defend them?

"MR. RAFFERTY:

Like I gave in my original testimony, I distinguish between what one does subjectively and what one does objectively. Objectively speaking, as I am standing here, I do not believe that the use of force is a solution to anything. Subjectively speaking, or in the situation like you so describe, I can't say that I would not. I don't know what I would do under that kind of circumstances, since I am an emotional person like everyone else.

"THE COURT:

In other words, you can't say that you wouldn't defend your wife?

"MR. RAFFERTY:

No, I can't say that.

"THE COURT:

Your wife and child, and you can't say that you wouldn't?

"MR. RAFFERTY:

No, I can't say that."

■ While Rafferty never expressly stated that he would resort to force, we need only note that a willingness to use force in defense of one's self or one's family is not inconsistent with a person's position that he would not bear arms in defense of the nation. Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955).

Reversed and remanded.