**Lt. Alvin A. ROSENFELD, M.D., Petitioner, Appellant,**

v.

**Rear Admiral Richard E. RUMBLE et al., Respondents, Appellees.**

**No. 75–1011.**

United States Court of Appeals, First Circuit.

Argued April 9, 1975.

Decided May 23, 1975.

Charles L. Field, Boston, Mass., with whom Mitchell Benjoya and Zisson & Benjoya, Boston, Mass., were on brief, for appellant.

Marshall D. Stein, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellant, a Lieutenant in the Medical Corps of the United States Naval Reserve obligated to two years of active duty upon completion of his residency in psychiatry, seeks discharge by a writ of habeas corpus on conscientious objector grounds. The only issues raised by the Navy's refusal to grant his application for discharge concern its determination that appellant's response to questions posed by a hearing officer indicated that he was not opposed to participation in war in any form. Appellant is of Jewish upbringing and faith, and has been profoundly influenced by his understanding of the holocaust of atrocities perpetrated against Jews by the Nazi regime. In answer to hypothetical questions, he took the position that he would personally bear arms, though not in a military unit, if a foreign nation crossed the territorial boundaries of this nation, having the avowed purpose of exterminating all Jews.

The magistrate concluded that this response established a prima facie case that appellant would fight only in defense of himself or his family and that therefore the burden lay on the government to refute the claim. He recommended that the issue not be determined on the government's motion to dismiss. The district court, after oral argument

and on the basis of pleadings and the relevant portions of the record of proceedings before the Navy hearing officer, held that the Navy's determination had a basis in fact and granted the motion to dismiss.

■ On this issue of basis in fact there is little reason to try to repeat in detail what the district court said in its thoughtful opinion. 386 F.Supp. 476 (D.Mass.1974). It accurately set forth the essential facts and identified the relevant authorities as to the standard of review. It appropriately noted that Gillette v. United States, 401 U.S. 437, 448, 91 S.Ct. 828, 835, 28 L.Ed.2d 168 (1971), recognized an area of permitted resort to force, without sacrifice of conscientious objector status, for those who would fight "in defense of home and family, or in defense against immediate acts of aggressive violence toward other persons in the community." As the court observed, such limitations in both time and geographic area are objective, not subjective criteria. Nor does Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955), with its recognition that a willingness to fight spiritual wars with non-carnal weapons does not destroy the status of conscientious objector, help appellant. His willingness extends to a secular war and carnal weapons.

■ That appellant would not fight as a member of the armed services seems to us, as it did to the district court, not persuasive. As the government pointed out in its brief, the early resolution of the Continental Congress in 1775 [1] and the first draft act of 1863 [2] spoke in terms of those who were conscientiously opposed to bearing arms. That the term "participate in war in any form" was intended to carry on the same meaning was explicitly stated in debate on the Selective Service Act of 1917,[3] which became the precursor to the contemporary provision.

We add only this observation to the district court's opinion. We are not insensitive to the genuineness of appellant's feeling that he would look upon an invader bent on extinguishing his co-religionists in this country as an immediate threat to his "family", extended and nuclear. There is recent history to back him up. But if exemption is given appellant for this reason, must not it also be given a Mormon, a Seventh Day Adventist, or to hark back to the Crusades, any professed Christian, if the invader be "infidel"? These hypothetical cases are of course quickly distinguished by their lack of verisimilitude—they are fantasies, whereas the holocaust was real. The existence of such an historical background is highly relevant on the issue of sincerity. But to allow it to be used to define the parameters of a person's family or community, so that fighting in defense of the country can be equated with defense of self and family, seems to us an irrational basis for distinction. For example, a patriotic humanist, believing in no God but deeply believing that the nation is his "family", would not, despite the intensity of his view of community, be entitled to his definition for purposes of qualifying as a conscientious objector.[4] We therefore conclude with what we said in a slightly different context in United States v. Curry, 410 F.2d 1297, 1299 (1st Cir. 1969), "Were appellant to be granted relief from the military burden on the basis of his stated views as to the occasions when wars should be fought, the statuto-

1. Journals of the Continental Congress, 1774–1789 Vol. II 1775 at p. 189. Government Printing Office 1905.

2. United States Statutes at Large, Vol. 13, p. 6 at p. 9.

3. Congressional Record Vol. 55, Part 1, 65th Congress, 1st Session, Senate, April 24, 1917, pp. 1004–1005.

4. Indeed, appellant is not insensible to the position of those who, though opposed to war generally would, out of love of country alone, take up arms in its defense. He argues that "government policy for too long has penalized conscientious objectors for their patriotism." Such an argument, however, is clearly foreclosed by the authorities. E. g., Gillette, supra.

ry standard would have been effectively eviscerated."

■ An issue not addressed to the district court has been put to us on appeal: whether the questions asked appellant violated the First and Fifth Amendments. The contention is that the injection into hypothetical questions of the assumption that a foreign invader would be bent on extermination of all Jews placed an unfair burden on appellant. Appellant calls these "loaded" questions. While we are not obligated to deal with this new issue, we do so in view of its nature. For if we were convinced that appellant had been lured by trickery onto treacherous ground, we would not take refuge in a procedural shelter. And it may well be that the effort to imagine honestly one's response to the hypothetical situation described is unique for a group that had in recent history a real experience. Had the hearing officer devised the question out of thin air, that is, just because appellant was of Jewish background and faith, we would be troubled. But a substantial, if not the major, thrust of appellant's seventy-page application for discharge was directed to his reflections over the enormity of the Nazi persecutions. Under these circumstances it was natural for the hearing officer to refer to this background in exploring the position of appellant. We are aware of the atmosphere of unreality created by hypothetical questions. Yet the Congressional mandate of "participation in war in any form" leaves no alternative to probing. Our view of the record reveals no indication of perverse imagination or exploitation by the hearing officer. Indeed, counsel for appellant pursued the same line of inquiry, obviously deeming it both relevant and fair at the time.

Affirmed.