**Lt. Douglas W. DONIGIAN**

v.

**Hon. Melvin LAIRD, Secretary of Defense, Lt. Gen. Jonathan O. Seaman, Commander of the 1st U. S. Army, Hon. Stanley Resor, Secretary of the Army; Col. John H. Hoffman, Commander, United States Army Reserve, Components Personnel Center.**

**Civ. A. No. 20884.**

United States District Court
D. Maryland.

Dec. 15, 1969.

Elsbeth Levy Bothe, Baltimore, Md., and Gaillard T. Hunt, Washington, D. C., for plaintiff.

Stephen H. Sachs, U. S. Atty., and Alan I. Baron, Asst. U. S. Atty., Baltimore, Md., for defendants.

NORTHROP, District Judge.

Lieutenant Douglas W. Donigian has brought a petition for habeas corpus in this court challenging the refusal of the Army to discharge him as a conscientious objector. The defendants answered, claiming that this court lacks jurisdiction, that the plaintiff has failed to exhaust his administrative remedies, and that on the merits, there was a basis in fact for the defendants' action in refusing to grant such a discharge. These contentions will be dealt with in order.

Lieutenant Donigian became a member of the Army ROTC while an undergraduate at Carnegie Institute of Technology, in Pittsburgh, Pennsylvania. He was commissioned in 1964, but was placed on inactive status and deferred in order that he might pursue graduate study in chemistry at Johns Hopkins University. During 1968 Donigian submitted his application for discharge pursuant to AR 135–25 as a conscientious objector. This application was denied, and on June 25, 1969, Donigian received orders to report for induction on July 6. These orders were subsequently revoked pending the outcome of this litigation.

The Army attacks the jurisdiction of this court on three grounds. First, that the plaintiff is not in custody, a requirement for habeas corpus; second, that such custody, if it exists, is not within the territorial jurisdiction of this court; and third, that no custodian can be found within the jurisdiction of the court.

■■ While it is true that custody is an essential element of a petition for habeas corpus relief, it is also true that the nature of the custody considered sufficient for habeas corpus has undergone significant conceptual change. At one time habeas corpus would lie only for those prisoners in actual confinement for the offense which was the subject of their petition. *See, e. g.,* Jones v. Cunningham, 371 U.S. 236, 238, 83 S. Ct. 373, 9 L.Ed.2d 285 (1963); McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L. Ed. 238 (1934). This notion of custody has expanded, however, and the writ ·is now looked on as a procedural device for subjecting restraints on liberty, although often short of actual physical confinement, to judicial scrutiny. It is used to test convictions before service of sentence for that offense has actually begun, Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); to test a conviction while the petitioner is on parole, Jones v. Cunningham, *supra*; and to test the validity of a conviction even after the prisoner's unconditional release, Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). This line of cases constitutes recognition of the fact that restraints on liberty short of physical confinement can be of such magnitude as to warrant the protection of the writ of habeas corpus, as "both the symbol and guardian of individual liberty." Peyton v. Rowe, 391 U.S. at 58, 88 S.Ct. at 1551. Habeas corpus "is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." Jones v. Cunningham, 371 U.S. at 243, 83 S.Ct. at 377.

■ With this background in mind, it would appear patently obvious that retention in the Army is a significant enough restraint on liberty to support habeas corpus jurisdiction. This position is further buttressed by a recent decision on virtually identical facts by the Second Circuit Court of Appeals in Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968). In that case petitioner, having enlisted in the Naval Reserve in September, 1963, became conscientiously opposed to war in any form and in March, 1967, submitted a request to his commanding officer for a discharge on that ground. Petitioner in that case had never served on active duty, and until the time of his application, was a student at the University of Connecticut. Rejecting the Navy's contention that the District Court lacked the power to issue a writ of habeas corpus because the petitioner was not in custody, the court said:

> [W]e believe the better reasoned and modern view is that a petitioner in Hammond's predicament is under sufficient restraint of his liberty to make appropriate habeas corpus jurisdiction. Any other view would make the ends to be served by the great writ wooden indeed. *Id.* at 711.

The attempts of the defendants in the instant case to distinguish *Hammond* are not convincing, and I feel that to hold that retention in the Armed Forces is not a sufficient restraint on liberty would be to ignore the realities of life.

■ Next the Army states the requirement that the custody must be in this jurisdiction, and contends that Donigian's custody, if it exists, is not within the jurisdiction of this court. On the facts of this case, this contention is unavailing. The first answer is that a strict territorial location of custody is not in keeping with the trend of thought in this circuit and elsewhere. *See, e. g.,* Word v. North Carolina, 406 F.2d 352 (4th Cir. 1969), where the court held that a prisoner serving a sentence in Virginia could attack a conviction in North Carolina. That case allowed a prisoner, clearly in custody in one jurisdiction, to maintain his habeas corpus action in a jurisdiction in which he was not even present. In this case, however, it is clear that I need not rely on the reasoning of *Word*. Having decided that retention in the Armed Forces is sufficient to constitute custody within

the meaning of the statute, it follows that the petitioner is in custody wherever he is. This is not to say that a habeas corpus action may properly be maintained by one in Donigian's position in any jurisdiction in which he may go. There is yet another requirement which must be met before jurisdiction is complete.

■ It is settled that in habeas corpus actions, for the jurisdiction of a District Court to be complete under 28 U.S.C. § 2241, the action must be brought against a proper custodian who is subject to the personal jurisdiction of the court. *See* United States ex rel. Rudick v. Laird, 412 F.2d 16 (2d Cir. 1969). Since the Army has contended that this requirement is not met, it must be determined whether any defendant in this suit is at once a proper custodian and subject to the jurisdiction of this court.

■■ The plaintiff has named, and effected personal service on the Hon. Melvin Laird, the Secretary of Defense. The plaintiff claims that by virtue of Mr. Laird's residence in Chevy Chase, Maryland, and his position in the government, personal service on him is sufficient to uphold this suit. This contention is without merit. Although the status of the Secretary of Defense as a proper custodian is not free from doubt, it is clear that the fact of his residence within this district is of absolutely no significance when a suit is maintained against him in his official capacity. In view of the fact that the official residence of the Secretary of Defense is in Washington, the seat of the United States Government, that is the only place in which he may be sued. Stroud v. Benson, 254 F.2d 448 (4th Cir. 1958) (Secretary of Agriculture); *cf.* United States ex rel. Rudick v. Laird, *supra*. Therefore maintenance of this action here is improper as to Secretary Laird. Similarly there does not appear to be personal jurisdiction over the Hon. Stanley Resor, Secretary of the Army, who was served by registered mail at his office at the Pentagon in Arlington, Virginia.

■ The plaintiff also joined Lieutenant General Jonathan O. Seaman, Commander of the First Army at Fort Meade, Maryland. While General Seaman might well be a proper official if the plaintiff were stationed at Fort Meade or attached to the First Army, such a situation does not exist here. Although some of the processing of the plaintiff's claim for conscientious-objector status was done at Fort Meade, he had no other connection with the First Army, and General Seaman can hardly be said to be his commanding officer or custodian. This administrative processing does have other ramifications, however, as hereinafter noted.

The only one of the defendants who is a custodian in the real sense is Colonel John H. Hoffman, Commander, United States Army Reserve Components Personnel Center, Fort Benjamin Harrison, Indiana, who was served by registered mail as required in 28 U.S.C. § 1391(e). That he stands in the position of a custodian does not appear to be seriously disputed. *See* Defendant's memorandum at 4. The only serious question is whether he is subject to the jurisdiction of this court.

■ Ordinarily habeas corpus petitions must be brought in the district in which the custodian is located. In Word v. North Carolina, 406 F.2d 352 (4th Cir. 1969) the court was confronted with suits by prisoners serving sentences in Virginia prisons, attacking North Carolina convictions. One of the prisoners had brought his petition in a North Carolina court, while the other two had filed theirs in a Virginia court. The court held that the former was proper, but that the "latter, where permissible, infrequently preferable." *Id.* at 355. This is one of the rare instances where maintenance of a habeas corpus action in a district other than that of the custodian is both permissible and preferable. Form in this instance cannot prevail over substance.

Lieutenant Donigian is a member of the United States Army Reserve. He is attached to no unit, and his activities are directed by the Reserve Officer Components Personnel Center at Fort Benjamin Harrison, Indiana. For its own convenience and economy, the Army has chosen to centralize its command with respect to Reserve Officers in Donigian's position, rather than having smaller commands throughout the country. The effect on the plaintiff is no different, however, than it would be if his orders were issued to him directly from a local headquarters. The Army seeks to exert control over Donigian in Maryland. It cannot, then, avoid the jurisdiction of this court merely because such control is exercised from a point located outside of this state. Although the Army contends that attendance at Johns Hopkins University was Donigian's choice, since he is there with permission of the Army, it is certain that he would have had to obtain the approval of the Army to transfer to another school. Binding orders were issued by Colonel Hoffman and sent to Donigian here in Maryland. Furthermore, when Donigian requested discharge as a conscientious objector, the requisite interviews were carried on at Fort Meade, in Maryland, and the reports were forwarded to the board in Indiana. Although the defendants claim that this procedure was used for Donigian's convenience, I do not find that fact, even if true, to be particularly relevant. The overpowering factor in this inquiry is that the Army, regardless of where its physical command is located, is such a pervasive force that its effects are felt wherever those under its command are stationed. In addition, on the facts of this particular case, the policies which dictate maintenance of ordinary habeas corpus actions in the sentencing state, appear to break down. Generally, the reasons for such a requirement stem from the availability of records and witnesses, and from the desire to avoid concentration of cases in districts in which federal penal institutions are located.

Here, the records are easily transferrable, no witnesses are necessary since the determination is made from the record, and a refusal to hear this case in this district would result in a concentration of similar cases in the district in which the Reserve Officer Components Personnel Center is located. There is no reason why this case should not be disposed of here, and I hold that Donigian's commanding officer, Colonel Hoffman, is subject to the jurisdiction of this court by virtue of the contacts he has had with this district while exercising control over the plaintiff. It would seem manifestly unfair to impose the expense and inconvenience upon petitioner of pursuing his remedy under these circumstances in either Indiana, or Texas where he was ordered to report.

In reaching this conclusion, I note that this is a highly unusual situation. This decision is in no way incompatible with Judge Thomsen's opinion in Weber v. Clifford, 289 F.Supp. 960 (D.Md. 1968), in which he observed that a plaintiff in transit from one duty station to another could not properly file an action in this district while on leave. Rather, he stated that "the proper district in which to file a habeas corpus petition. must have been either in Oklahoma, where the orders were issued, or in California, where plaintiff was ordered to report." Id. at 961. See also United States ex rel. Rudick v. Laird, 412 F.2d 16 (2d Cir. 1969). In both of those cases the plaintiff was in custody by virtue of his active duty, and had ascertainable duty stations. In both of those cases the custody had no relationship to the jurisdiction in which relief was sought. Here, however, Donigian is not on active duty, and the custody of which he complains relates very definitely to this district. As a general rule the results of Weber and Rudick are the proper ones; in only the exceptional case would a different resolution be justified.

The Army's second contention is that petitioner has not exhausted his administrative remedies because he has

not requested action by the Army Board for Correction of Military Records. This contention is without merit. United States ex rel. Brooks v. Clifford, 412 F. 2d 1137, denying rehearing of 409 F.2d 700 (4th Cir. 1969) appears to settle this question in this circuit. The court there held that "the weighing of the factors which would tend to promote judicial convenience against the burdens on petitioner, or any similarly situated serviceman, result in the conclusion that resort to the Army Board should not be required." *Id.* at 1141. In so holding, however, I am not unmindful of the decision of the Supreme Court in *Noyd v. Bond,* 395 U.S. 683, 89 S.Ct. 1876, 23 L. Ed.2d 631 (1969) which required exhaustion of remedies as provided by the Uniform Code of Military Justice before resort to civilian courts would be allowed. In that case the petitioner was confined pursuant to the sentence of a general court martial and he filed his petition before completion of his military appeal. While that decision is certainly binding on this court, it does not apply to the case at bar, since Lieutenant Donigian has not been convicted by a general court martial, and his situation is in no other way similar to that in *Noyd.* Additionally, it should be noted that on March 31, 1969, Lieutenant Donigian wrote to Colonel Hoffman, requesting an appeal from the decision of the Army Conscientious Objector Review Board. In his reply of April 15, 1969, Colonel Hoffman indicated that this decision was final, that no appeal was possible, and that Lieutenant Donigian would be required to report for active duty on July 6, 1969. Although this letter did indicate that a new consideration might be possible upon submission of additional or new facts, it clearly implied that no appeal was available to Donigian on the existing record.

■ Turning now to the merits, Lieutenant Donigian is entitled to the relief sought in this action if there is no basis in fact for the refusal of the Army to classify him as a conscientious objector under its own regulations. United

States ex rel. Brooks v. Clifford, 409 F. 2d 700, reh. denied 412 F.2d 1137 (4th Cir. 1969). With this standard in mind, I conclude that Lieutenant Donigian is entitled to his discharge as a conscientious objector.

Lieutenant Donigian was born in 1942 to Protestant parents. According to his application for discharge as a conscientious objector, his parents did not take him to church, and his own religious life did not take on any significance to him until sometime in 1958 when he began to attend church with some friends. In April, 1959, he attended a meeting where a "saving minister" was the guest speaker, and on the following day he experienced what Baptists term a "conversion experience." This is described by the petitioner as "a sudden feeling of great joy, hope, and comfort. From that time on I have always prayed and believed God was interested in individuals." At this point, however, it does not appear that his religious feelings were very structured, since he neither began to read the Bible regularly, nor attended a church, or accepted baptism.

He entered college at the Case Institute of Technology at Pittsburgh, Pennsylvania (now Carnegie-Mellon University) in 1960. In 1962 he entered the advanced course of Army ROTC, having apparently no religious objections to military service. His attitude began to change, however, after his experience in summer camp in 1963:

> In summer camp in 1963 I was very disillusioned. The training was filled with "killer" indoctrination whereas I thought that only physical training would be given. Even in church we sang patriotic songs and were asked to pray that our training (which next day included shouting "Ha! Kill!" on a bayonet field) be made easier on us. I felt that what I was doing was terribly wrong and against my conscience.

In the fall of 1963, after returning to school, he requested permission to drop ROTC, but according to the information in his application for discharge, was convinced by Major Johnson to accept a

transfer to the Medical Service Corps where he "would be helping, not hurting, people." He continued in this posture, and accepted a commission in the Medical Service Corps upon graduation from college.

At the completion of his undergraduate training, Donigian married, and pursuant to an arrangement with the Army, obtained a deferment to study chemistry on a graduate level at Johns Hopkins University. One of the important conditions of this deferment was the agreement that he would serve his active duty upon completion of his Ph.D. program. It appears from the record that during his graduate study, from 1964 to the present, Donigian's religious life developed more fully, ultimately culminating in the belief that the "teachings of Christ in the Gospels does condemn killing and hence, war for any reason and also that it would be against God's will for me to support war even in the Medical Service Corps."

In refusing to grant Lieutenant Donigian's request for discharge as a conscientious objector, the Board gave two bases for its action. First, it found that his beliefs were based on a personal moral code.

> His case is constructed around a personal objection to violence and the taking of human life. His reference to religion and the doctrines of the Baptist Church appears to have been used simply to add theological credence to his application.

Second, the Army Board held that his alleged conscientious objection was not sincere. In reaching this conclusion, the Board found that:

> While he states that his alleged beliefs actually became fixed in the Fall of 1963, he did not make any sincere attempt to obtain a 1–0 classification until the Spring of 1968; an elapsed period of over 4 years. During this four plus years, Lt. Donigian has been commissioned, enjoyed a draft-free status, obtained an advanced degree in his chosen academic field, married,

and began raising a family. In considering the timing of this case, the Board did not accept the sincerity of his alleged conscientious objection beliefs.

While the Board's finding must be upheld unless it has no basis in fact, and the Board is permitted to draw inferences from the facts it finds, I find that the record reveals absolutely no basis in fact for either of these findings. Since the religious basis and sincerity questions depend on the same evidence in this case, I will treat them both together.

The record before the Army Board contained the following items:

1. A letter of January 9, 1969, from Lewis B. Hershey, Director of Selective Service.

2. A letter of March 12, 1968, from Cornelius David Helfrich, who lived in the same apartment building as the petitioner, supporting his claim for conscientious objector status.

3. A letter of April 26, 1968, from the petitioner's parents supporting his application for discharge.

4. A letter of April 29, 1968, from J. W. Gryder, Professor of Chemistry at Johns Hopkins University, supporting the application for discharge.

5. A letter of April 30, 1968, from Chester L. Wickwire, Chaplain at Johns Hopkins University, supporting the application for discharge.

6. A letter of May 1, 1968, from Thomas W. Downing, Pastor of the University Baptist Church in Baltimore, Maryland, supporting the application for discharge.

7. A letter of May 1, 1968, from Dr. Robert W. Dundon, S.J., Theology Student and Research Fellow at Woodstock College, and Instructor of Chemistry, Evening College, Johns Hopkins University, supporting the application for discharge.

8. Report of July 22, 1968, interview with a chaplain at Fort Meade, Maryland.

9. Report of an interview on November 20, 1968, with an officer of grade 0–3 or higher.

10. A consultation sheet reflecting an interview with an Army psychiatrist.

11. Lieutenant Donigian's answers to the questions on form AR 135–25.

It is significant to note at the outset that nowhere in any of this material is either the religious basis or the sincerity of Donigian's belief questioned in even the slightest degree.

The letters from Donigian's parents and acquaintances substantiate his statements relative to the development of his religious beliefs. Among other things, in an effort to resolve the religious doubts which he had, and to assist in the development of his religious attitudes, Donigian participated in a regular weekly discussion group at Johns Hopkins. He had, also, over a period of several years sought the advice and counsel of both laymen and clergy in his effort to resolve and clarify for himself his struggle with his conscience. Nowhere in the record does there appear anything but highly corroborated evidence of a religious, honest and sincere individual who has arrived at his decision only after much deliberation.

Very important to this conclusion are the reports of the three interviews Donigian had with Army personnel pursuant to Army regulations. These reports are uniform in their acceptance of Donigian's sincerity, and in their recommendation that he be granted discharge as a conscientious objector.

■■■ A similar conclusion was reached by General Lewis Hershey in his review of the case, when he stated in his letter of January 9, 1969: "Based on the information in this file, it is my opinion that as between Classes I–A, I–A–O and I–O, First Lieutenant Douglas W. Donigian would be properly classified in Class I–O, as a conscientious objector, if he were being considered for induction at this time." It is highly likely that a negative decision by the Director of Selective Service, in such an advisory opinion, would normally be decisive. *Cf.* Hammond v. Lenfest, 398 F. 2d 705, 709 (2d Cir. 1968) (naval regulations). Nevertheless, in spite of all of the reports and letters, the Army Board held against the petitioner. While the Board is entitled to draw inferences from the record before it, in this case there is absolutely no evidence to support them. The Board inferred lack of sincerity from the timing of the application. All of the evidence in the record, however, is to the contrary, and I therefore hold that the Board's finding was without any basis in fact. The same is true of the contention as to lack of religious basis for Donigian's conscientious objection.

Donigian's petition is hereby granted. If the Army does not (a) file an appeal from this decision to the Fourth Circuit Court of Appeals within the time provided for such appeal, and (b) thereafter diligently prosecute that appeal, the Army should grant the appropriate discharge; otherwise this court will issue a writ of habeas corpus requiring Donigian's discharge.