**UNITED STATES of America ex rel. Richard R. LOHMEYER**

v.

**Hon. Melvin LAIRD, Secretary of Defense, Hon. Stanley Resor, Secretary of the Army, Major General K. G. Wickham, Adjutant General of the Army, and Lieutenant General Jonathan O. Seaman, Commander, 1st U. S. Army, Fort Meade, Maryland.**

**Civ. A. No. 20719.**

United States District Court,
D. Maryland.

May 20, 1970.

Elsbeth Levy Bothe, Baltimore, Md., for petitioner; Gaillard T. Hunt, New York City, of counsel.

Stephen H. Sachs, U. S. Atty., and Alan I. Baron, Asst. U. S. Atty., D. Maryland, Baltimore, Md., for respondents.

WATKINS, District Judge.

Petitioner, a member of the United States Army, brings this action seeking a writ of habeas corpus and relief in the nature of mandamus, the effect of which would be, if the relief prayed were granted, his discharge from the army as a conscientious objector. The respondents have filed a motion to dismiss asserting that: (1) This court lacks jurisdiction over the subject matter, (2) the petitioner is not confined within the territorial jurisdiction of the court, (3) the petitioner has failed to exhaust his administrative remedies and (4) there is basis in fact for the finding that the petitioner is not entitled to discharge as a conscientious objector.

Petitioner enlisted in the army in October 1967 for a term of four years. According to his complaint he allegedly became for the first time opposed to participation in war in any form in late 1968. On January 29, 1969 he submitted to the Commanding Officer of Company B of the Defense Language Institute, West Coast Branch, Presidio of Monterey, California, an application for discharge as a conscientious objector. This application was denied and petitioner was ordered to report to Oakland Army Base for further assignment to the Republic of Vietnam pursuant to orders issued by the Oakland Army Base. Petitioner's eventual assignment to Vietnam was by no means unexpected as petitioner had entered the army with just such an assignment in mind and had attached himself to the "Army Security Agency in particular because of the opportunity it offered to me to learn the Vietnamese language." Having received his orders to report, petitioner was then granted a leave and about five weeks later while on leave in Maryland decided, some several days before his orders to report would have become effective, to file the instant suit.

In order to deal intelligently with the challenge of the respondents to the jurisdiction of this court, it is necessary to distinguish three types of jurisdiction; first, jurisdiction over the subject matter; secondly, venue jurisdiction and, thirdly, personal jurisdiction over the various individual respondents. Jurisdiction over the subject matter is governed by the provisions of section 2241 of Title 28, U.S.C., which states, in part:

"(a) Writs of habeas corpus may be granted by * * * the district courts within their respective jurisdictions."

The statute then makes a mandatory prerequisite to the seeking of relief the requirement that the petitioner be "in custody." This requirement of "custody", however, has undergone significant conceptual changes in recent years. No longer need the petitioner be in actual physical confinement. A petition for ha-

beas corpus relief, a type of relief perhaps most frequently resorted to by one convicted of a crime and hence under actual physical restraint, may now be entertained to test the validity of a conviction before service of sentence imposed as to that conviction has begun (Peyton v. Rowe, 1968, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426; cf. McNally v. Hill, 1934, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238); or to test the validity of a conviction while the petitioner is not incarcerated but is on parole (Jones v. Cunningham, 1963, 371 U.S. 236, 83 S. Ct. 373, 9 L.Ed.2d 285); or to test the validity of a conviction even after petitioner's unconditional release from confinement. (Carafas v. La Vallee, 1968, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554). In view of this line of cases broadening the concept of "custody" from an actual physical custody to a significant restraint on liberty, it is not surprising, therefore, that one subject to military orders or control has of late uniformly been found by the courts to be "in custody" as that term is used in section 2241 of Title 28 U.S.C. and hence one authorized to seek habeas corpus relief. (United States ex rel. Rudick v. Laird, 2 Cir. 1969, 412 F.2d 16, 19; Hammond v. Lenfest, 2 Cir. 1968, 398 F.2d 705; Donigian v. Laird, D.Md.1969, 308 F.Supp. 449; Benitez-Manrique v. Micheli, D.Puerto Rico, 1969, 305 F. Supp. 334; Nason v. Secretary of the Army, D.Mass.1969, 304 F.Supp. 422; and Laxer v. Cushman, D.Mass.1969, 300 F.Supp. 920).

Where the courts have not found themselves in agreement, however, is in regard to whether or not an individual in a situation analogous to petitioner's, that is a military man under orders from his former duty station to report to a new duty station but lawfully on leave and physically within the territorial jurisdiction of the forum, is "in custody" within the jurisdiction of that court. The respondents in earnestly urging that in the instant case the petitioner is not in custody within the territorial jurisdiction of this court rely solely on Ahrens v.

Clark, 1948, 335 U.S. 188, 192–193, 68 S.Ct. 1443, 92 L.Ed. 1898 and United States ex rel. Rudick v. Laird, 2 Cir. 1969, 412 F.2d 16, the latter being a case factually close to the one now before this court. Certiorari was denied in Rudick on November 10, 1969, 396 U.S. 918, 90 S.Ct. 244, 24 L.Ed.2d 197. The Second Circuit had this to say in the Rudick opinion:

> "As appellant [petitioner below] concedes, the general rule in regard to personal jurisdiction under Section 2241 is that the writ may only issue within the district where the petitioner is 'in custody.' The relevant phrase in Section 2241, 'within their respective jurisdictions,' limits the power of a district court to hear and determine a prisoner's petition for habeas corpus to those situations where the prisoner both is physically present in the court's territorial jurisdiction and is detained or held in custody within that jurisdiction. Ahrens v. Clark, supra. * * *" (412 F.2d 20).

The court then cited two additional cases in support of this premise, Orloff v. Lovett, D.D.C.1951, 101 F.Supp. 750—a case the present authority of which is suspect both because of its age and because of a lack of discussion of the point in issue— petitioner apparently conceding that he was "not restrained within" the district —and Ragsdale v. Cameron, 1963, 117 U.S.App.D.C. 278, 329 F.2d 233. The Ragsdale case was, in effect, overruled in Cameron v. Mullen, 1967, 128 U.S.App. D.C. 235, 387 F.2d 193, 196, f. n. 4 although the court preferred to speak of Ragsdale not as being overruled in effect but as presenting a different factual situation. As this court reads the Cameron opinion the Circuit Court for the District of Columbia pointed out a difference between Cameron and Ragsdale but a difference without a legal distinction. Thus the cases, aside from Ahrens, cited by the Second Circuit in Rudick are not persuasive to this court. And as far as Ahrens is concerned, the United States Court of Appeals for the Fourth Circuit, whose rulings are binding upon

this court, has interpreted that case as follows:

"Only Mr. Justice Douglas, who wrote for the Court in Ahrens v. Clark and Mr. Justice Black, who joined in the dissent, are now members of the Court. But we need not speculate about the result if the precise Ahrens v. Clark situation were presented to the Court today,[7] for subsequent cases

"7. But see Sokol, A Handbook of Federal Habeas Corpus 46–50. The Michie Company (1965). [Sokol, Federal Habeas Corpus, Second Edition, 1969, pages 84–88].

have made it plain that physical presence of the prisoner within the district is not an invariable prerequisite.

\* \* \* \* \* \*

"From all of these cases it now seems clear that if the words 'within their respective jurisdictions' in § 2241 mean anything more than that the court may act only if it has personal jurisdiction of a proper custodian and the capacity, within its geographic boundaries, to enforce its orders,[9]

"9. See D. J. Meador, Habeas Corpus and Magna Carta, University of Virginia Press (1966), page 42. Dean Meador expresses the view that, from the nature of the writ, ' \* \* \* [a]ll that is required for effective issuance of the writ is that such a custodian be within the power of the court. It is immaterial where the prisoner is actually confined. \* \* \*.'

physical presence of the petitioner within the district is not an invariable jurisdictional prerequisite. It gives way in the face of other considerations of fairness and strong convenience. It will not be applied to leave one in prison without an effective remedy, to limit the reach and usefulness of related writs authorized by the same statute or to require the dismissal of proceedings once they have been properly begun. It is little more than a precatory direction, as the author of the majority opinion in Ahrens v. Clark explained in Hirota v. MacArthur. [1949, 338 U.S. 197, 69 S.Ct. 197, 93 L.Ed. 1902]." (Word v. State of North Carolina, 4 Cir. 1969, 406 F.2d 352, 358, 359).

Thus it may be seen that none of the cases cited by the Second Circuit in the Rudick opinion remain today authority for the proposition for which they were cited.

Moreover, the Rudick case itself does not apply the proposition that a petitioner must be in custody within the district expressly to the facts then before it. Rather the court having stated the general principle, having cited the three cases discussed above in support of this principle, having posed two questions and not having found it "necessary to reach either question in the present case", proceeded to state the views of each side as to petitioner's detention or lack of detention within the district and then concluded:

"It is readily apparent that neither the Secretary of the Army nor the Secretary of Defense, nor any other official who may be appellant's commanding officer, can be found in the Southern District of ·New York. Therefore, no person having custody of the appellant is within the territorial jurisdiction of the District Court, nor is such person within reach of the District Court's process. On that basis alone, jurisdiction appears lacking. Furthermore, under appellant's view, a soldier seeking habeas corpus relief would not be required to bring suit against his commanding officer where he is stationed and presumably where his pertinent files are located. Instead, he would be entitled to sue the Secretary of the Army or the Secretary of Defense in any forum of his own choosing anywhere in the United States. Additionally it is doubtful whether a soldier who is absent without leave can be characterized as within the custody of any officer of the Armed Forces, any more than it can be said that an escaped prisoner is in the custody of his jailer. Ragsdale v. Cameron, supra.

"It is apparent then that there was no jurisdiction in the District Court at the time suit was commenced and that the District Court's refusal to sign an order to show cause on that ground was not erroneous." (United States ex rel. Rudick v. Laird, 2 Cir. 1969, 412 F.2d 16, 21).

Clearly, in Rudick the court was concerned with jurisdiction over the respondents, not with jurisdiction over the petitioner; with the convenience of the forum—in other words, venue jurisdiction—not with jurisdiction over the subject matter; and with whether or not petitioner was in custody at all as he was absent without leave, not with determining *where* he was in custody. In no place in the entire opinion does the court ever expressly say that Rudick was not in custody within the territorial jurisdiction of the court.

■ However, even if such had been the direct holding of the Second Circuit, this court would have distinguished the instant case factually from the Rudick case on the ground that the instant petitioner was lawfully on leave when his petition was filed and in addition would, as it now does, adopt and follow the reasoning of Judge Edward S. Northrop of this court on this point when he held:

" * * * Having decided that retention in the Armed Forces is sufficient to constitute custody within the meaning of the statute, it follows that the petitioner is in custody wherever he is. This is not to say that a habeas corpus action may properly be maintained by one in Donigian's position in any jurisdiction in which he may go. There is yet another requirement which must be met before jurisdiction is complete.

"It is settled that in habeas corpus actions, for the jurisdiction of a District Court to be complete under 28 U.S.C. § 2241, the action must be brought against a proper custodian who is subject to the personal jurisdiction of the court. See United States ex rel. Rudick v. Laird, 412 F.2d 16 (2d Cir. 1969). Since the Army has contended that this requirement is not met, it must be determined whether any defendant in this suit is at once a proper custodian and subject to the jurisdiction of this court." (Donigian v. Laird, D.Md.1969, 308 F.Supp. 449, 451–452).

■ In considering the four respondents it readily becomes apparent that Lieutenant General Jonathan O. Seaman, Commander of the First Army at Fort Meade, Maryland can not be characterized as a custodian of petitioner as petitioner has never been stationed at Fort Meade or attached to the First Army. The other three respondents, however, may be properly treated as custodians of the petitioner particularly in view of the vacuum created as to which commanding officer of which duty station, if in fact either, had immediate control over petitioner during a period of time when, while under orders from his former duty station to report to a new duty station, he was officially on leave. (United States ex rel. Rudick v. Laird, 2 Cir. 1969, 412 F.2d 16, 21). This leaves then for determination whether or not any or all of these three respondents are subject to the jurisdiction of this court.

■■ The Secretary of Defense lives in Chevy Chase, Maryland. However, his personal residence as an individual is of absolutely no significance as far as his residency is concerned when a suit is brought against him in his official capacity. It is his official residence as Secretary of Defense in Washington, D. C., the seat of the government of the United States that is controlling as to where "he resides" in such a case. (Stroud v. Benson, 4 Cir. 1958, 254 F.2d 448, 451–452—dealing specifically with the Secretary of Agriculture but equally applicable to any other government officer). Thus until 1962 under the then existing provisions of Title 28, U.S.C., section 1391(b) such an official was amenable to suit, in a case of the instant nature, solely in the District of Columbia. (South Carolina v. Katzenbach, 1966, 383 U.S. 301, 331–332, footnote 41, 86 S.Ct.

803, 15 L.Ed.2d 769). In 1962, however, section 1391 of Title 28, U.S.C., was amended to add subsection (e) which reads:

*"A civil action in which each defendant is an officer or employee of the United States* or any agency thereof *acting in his official capacity* or under color of legal authority, or an agency of the United States, *may,* except as otherwise provided by law, *be brought in any judicial district in which*: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, *or (4) the plaintiff resides* if no real property is involved in the action.

"The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought." (Emphasis supplied).

Professor Moore in considering the import of this amendment makes the following comments:

" * * * This subsection *realistically broadens venue in any civil action (not just mandamus proceedings)* where each defendant is a federal officer, employee, or agency and is sued for acts done in his official capacity or under color of legal authority; *and provides for extra-territorial service of process, if necessary,* in such an action.

   \*     \*     \*     \*     \*     \*

"In brief, the Act *added to* but did not take away *subject-matter jurisdiction* which the district courts already had. And it did not create any new liabilities or causes of action against the government or its officers and agencies. *Its purpose was to make it possible to bring a civil action* in which each defendant is an officer or employee of the United States or any agency thereof acting in his official

capacity or under color of legal authority, or an agency of the United States, *in district-courts outside the District of Columbia, which because of prior limitations—mainly venue and service of process—could only be brought in the district court for the District of Columbia."* (2 Moore's Federal Practice, 2nd Edition, paragraph 4.29, pages 1210–1211; emphasis supplied).

Judge Wallace S. Gourley having before him a proceeding against, among others, the Secretary of Defense to enjoin the enforcement of an active duty order issued to an enlistee in the Pennsylvania Army National Guard and being met with the defense asserted on behalf of Secretary Laird that the court lacked personal jurisdiction over him stated:

"Although Section 1391 ostensibly is concerned with venue as distinguished from jurisdiction, Professor Moore concludes that the addition of subsection (e) was, in fact, intended to extend the extraterritorial jurisdiction of federal district courts where each of the named defendants are officers, employees, or agencies of the United States. 2 J. Moore, Federal Practice, paragraph 4.29, at 1210–11 (2 ed. 1967). This is confirmed by a reading of Sen.Rep. No. 1992, 87th Cong., 2d Sess., to accompany HR 1960, 2 U.S.Code Cong. and Adm.News (1962) p. 2784. I therefore conclude that the Court does have authority to exercise extraterritorial jurisdiction in the circumstances contemplated by Section 1391(e)." (Metz v. United States, W. D.Pa.1969, 304 F.Supp. 207, 209).

In the instant case the petitioner is a resident of Maryland. Hence, under section 1391(e) (4) of Title 28 suit was properly brought in this district. Extraterritorial service of process was effected on the Honorable Stanley Resor, Secretary of the Army and on Major General K. G. Wickham, Adjutant General of the Army, by certified mail pursuant to the statutory authorization of section 1391(e) and personal service was effected upon the Honorable Melvin Laird,

Secretary of Defense, pursuant to the provisions of Rule 4(d), F.R.C.P., 28 U.S.C. This court concludes therefore that having jurisdiction over the subject matter,[1] having venue jurisdiction and having jurisdiction over the respondents this case is properly before the court.

■ This leaves then as the last preliminary or threshold question for consideration the contention of the respondents that petitioner has failed to exhaust his administrative remedies and that, accordingly, his petition should not be entertained. As was succinctly stated by Judge Anthony Julian in Laxer v. Cushman, D.Mass.1969, 300 F.Supp. 920, 925–926:

> "In recent decisions * * * two different Courts of Appeals have reached contrary results on the question whether, in habeas corpus cases involving applications for discharge from the military on conscientious objector grounds, the usual exhaustion doctrine applies so as to require an application to the appropriate Board for Correction. On March 5, 1969, in Craycroft v. Ferrall, supra, 408 F.2d 587, the Court of Appeals for the Ninth Circuit held that failure to apply to the Board for Correction of Naval Records constituted a failure to exhaust available military remedies. Accordingly, that court affirmed the district court's dismissal of Craycroft's petition for injunctive, declaratory and habeas corpus relief. Two weeks later, on the other hand, the Court of Appeals for the Fourth Circuit reached the opposite conclusion in United States ex rel. Brooks v. Clifford, 1969, 4 Cir., 409 F.2d 700. Accord, Gann v. Wilson, 1968, N.D. Cal., 289 F.Supp. 191, 193."

Promptly after the ruling of the Fourth Circuit in the Brooks case the respondents in said case petitioned for a rehearing on the exhaustion of remedies point; citing and relying upon the Craycroft decision which had been handed down, unbeknown to the Fourth Circuit a day before argument was heard in the Brooks litigation. In denying the petition for rehearing Circuit Judge Harrison L. Winter, speaking for a majority of two, stated the position of the Fourth Circuit as follows:

> "On balance, we think that the weighing of the factors which would tend to promote judicial convenience against the burdens on petitioner, or any similarly situated serviceman, result in the conclusion that resort to the Army Board should not be required." (United States ex rel. Brooks v. Clifford, 4 Cir. 1969, 412 F.2d 1137, 1141).

This position was reaffirmed by the Fourth Circuit in United States ex rel. Tobias v. Laird, 4 Cir. 1969, 413 F.2d 936. As the decisions of the Court of Appeals for this Circuit are binding upon this court, the contention of the respondents that petitioner's application should not be entertained for failure to exhaust administrative remedies obviously can not prevail.

■ Turning then to the substantive issue of the instant case, "the scope of judicial review in a case of this nature is the sharply limited one of determining whether there was a basis in fact for the finding that petitioner was not a conscientious objector." (United States ex rel. Brooks v. Clifford, 4 Cir. 1969, 409 F.2d 700, 705). On January 30, 1969 petitioner submitted under Army Regulation No. 635–20 on DA Form 2496 his application for discharge as a conscientious objector setting forth in de-

---

1. Convinced that subject matter jurisdiction exists under Title 28 U.S.C., section 2241, the court will not belabor the possibility of jurisdiction under section 1361 of Title 28. Suffice it to say in this connection that the case of United States ex rel. Schonbrun v. Commanding Officer, etc., 2 Cir. 1968, 403 F.2d 371, 374–375 is instructive as to the various rubrics under which an action such as the instant one might conceivably be brought.

tail on some six typewritten pages the nature of the belief underlying his claim for separation from the army. He stated in the opening sentences of said affirmation of belief:

"I believe in Christian Situation Ethics, that is to say I believe in God; and, I believe that He has revealed to man through Jesus Christ the foundation of all law, the essence of all life's maening [sic], and the one truth man's brief existence can know. This truth, this essence, this foundation is called Love, or, more properly, AGAPE, to distinguish it from sentimentalism and eroticism."

Thereafter pursuant to the prescribed procedure petitioner was interviewed by a psychiatrist, an army chaplain and three army officers. The psychiatrist's report was that he found "no signs of psychiatric disease which would warrant disposition of this case through other than administrative channels." The other interviewers summarized their findings as follows.

Chaplain Lawrence E. Haworth: [Literal transcription]

"1. Pvt. Richard R. Lohmyer RA680-00006, has counseled with me concerning his application for conscientious objector 1–0 status. We conversed at length and treated the matter quite comprehensively.

"2. Pvt. Lohmyer's application form states his views quite well. It is my opinion that the soldier is *quite sincere and genuine* in his beliefs. He has given the matter much serious thought. I feel, at the same time, that his consideration of the subject has been somewhat less than comprehensive.

"3. It is my opinion that this conviction is *based primarily on religious beliefs* even though strong philosophical beliefs enter in and even though the man does not hold membership in a religion holding predominantly pacifistic doctrines. The origin of his beliefs, it appears to me, come equally

from a sociological, philosophical, and religious base." (Emphasis supplied).

Lieutenant Colonel Kerr B. Posey:

"Recommend disapproval. In my interview with PVT Lohmeyer, I was *impressed with his religious convictions,* however, I do not believe that his application for discharge is based solely on religious grounds." (Emphasis supplied).

Captain Richard L. Sutter:

"2. Recommend disapproval.

"3. It is apparent after a thorough study of PVT Lohmeyer's written request and an extended personal conference with him that his beliefs, while *sincere,* are not the product of religious training either formally, as a church member, or informally, as a result of opinions taught in his home. PVT Lohmeyer is confused about his moral obligations and immature in his approach to life. To release him from his voluntary obligation to serve in the U.S. Army would effect only an increased confusion in his life, and would encourage others to follow similar irresponsible tendencies." (Emphasis supplied).

Captain Allen T. Hay:

"1. Recommend disapproval: I have interviewed subject EM and feel that he is not sincere in his beliefs. I feel that his views are *based more on sociological and philosophical views than on purely religious grounds.*

"Two days prior to his informing me that he wanted to apply for a discharge as a conscientious objector subject EM participated in M-14 familiarization firing. This is contrary to the beliefs that he stated to me in his interview. It is also contrary to the beliefs stated in his application." (Emphasis supplied).

These summaries of the interviewing officers' personal impressions of petitioner together with petitioner's application for discharge containing his "statement of belief" were then forwarded along the chain of command to the Board of Review which, after reading the rec-

ord, concluded that "applicant's objection to service is not based upon sincere religious training and belief, but rather upon a personal moral code." This finding was adopted by and became the final determination of the Adjutant General and petitioner's application for discharge was thereupon disapproved.

■ This court has concluded after a careful and thorough scrutiny of the entire record, well recognizing that the Board is entitled to draw inferences from the facts before it, that there was in this case no basis in fact for the Board's ultimate holding. It must be noted that the only "evidence" before the Board of Review was petitioner's own statement of his beliefs, which might well be expected to be—and in this case was—fully supportive of his claim to discharge; and the comments of the interviewing officers. These comments range in judgmental evaluation from "quite sincere and genuine" conviction "based primarily on religious beliefs"; "impressed with his religious convictions"; to "sincere" but "not the product of religious training" and "based more on sociological and philosophical views than on purely religious grounds." If the length or type of religious training, formal or informal, were the test, the sincerity of the conversion of Saul while on the road to Damascus might be open to question. It is equally clear that the courts have not interpreted the statutory exemption granted by section 456(j) of Title 50 U.S.C., App., as requiring that one be motivated *purely* by views derived from religious training and belief. As was said by the United States Court of Appeals for the Fourth Circuit in United States ex rel. Brooks v. Clifford, 4 Cir. 1969, 409 F.2d 700, 708:

"* * * We find it unnecessary to attempt any clearer definition or to examine the record to determine the presence or absence of support for the conclusion, because we are satisfied that even if petitioner was motivated in part by a personal moral code, he is still entitled to the exemption because of the unquestioned finding that he was also substantially motivated by views derived from religious training and belief.

"In United States v. Seeger, supra [380 U.S. 163, 85 S.Ct. 850, 13 L.Ed. 2d 733], the Court discussed the situation of registrants whose beliefs are based on a 'merely personal moral code.' In dealing with this exception to the exemption, the Court noted that it had construed the statutory definition of a conscientious objector broadly and 'it follows that any exception to it must be interpreted narrowly.' Significantly, the Court continued, '[t]he use by Congress of the words "merely personal" seems to us to restrict the exception to a moral code which is not only personal *but which is the sole basis for the registrant's belief* and is in no way related to a Supreme Being.' 380 U.S., at 186, 85 S.Ct. at 864 (emphasis supplied). Thus, we read Seeger as holding that a disqualifying 'merely personal code' is one which, unlike that of petitioner, constitutes the sole basis for his beliefs."

Accordingly, under the principles enunciated by the Supreme Court in Seeger, by the Fourth Circuit in Brooks and by Judge Alexander Harvey, II, of this district in United States v. Shacter, D.Md. 1968, 293 F.Supp. 1057, this court can only conclude that the Board of Review applied incorrect legal standards to the facts on record before it and that its denial of petitioner's application for discharge was without any basis in fact as a matter of law.

The petition for habeas corpus relief is hereby granted. If an appeal from this decision to the United States Court of Appeals for the Fourth Circuit is not taken within the time allowed or, if taken, is not thereafter diligently prosecuted, the respondents should grant the appropriate discharge; otherwise this court will issue a writ of habeas corpus requiring petitioner's discharge.