**William M. DECKER, Plaintiff,**

v.

**H. W. WHEELER and Stanley B. Resor, Defendants.**

**No. 4–70–Civ. 214.**

United States District Court,
D. Minnesota,
Fourth Division.

Memorandum Decision Dated Sept. 10, 1970 was Filed Sept. 10, 1970.

# 348

Gordon C. Moosbrugger, St. Paul, Minn., for plaintiff.

Stephen G. Palmer, Asst. U. S. Atty., Minneapolis, Minn., for defendants.

## MEMORANDUM DECISION

LARSON, District Judge.

Plaintiff William Decker is a commissioned second lieutenant in the United States Army Reserve. On March 3, 1970, Lieutenant Decker, seeking to be relieved of that commission, filed an application for a conscientious objector discharge. On April 10, 1970, plaintiff received orders to report for active duty at Fort Gordon, Georgia. His reporting date was May 27, 1970. This Court, by virtue of an Order issued on May 27, 1970, temporarily restrained defendants from executing the order to report until such time as further arguments could be heard on the matter. Plaintiff's application for a discharge was formally denied by the Review Board at Fort Benjamin Harrison, Indiana, on June 1, 1970. No appeal was taken from this denial. However, the parties to this action have stipulated that none was necessary and that the administrative remedies available to plaintiff have been exhausted. On July 6, 1970, this Court denied defendants' motion to dismiss for lack of jurisdiction and treated plaintiff's complaint as a habeas corpus proceeding. It is in this posture that the Court approaches the matter of plaintiff.

The critical issue before this Court is whether or not the Review Board at Fort Benjamin Harrison was justified in denying plaintiff's application. If it was, then the writ must be dismissed and plaintiff will be obligated to report for active duty in accordance

with his orders. However, if there was no justification for the Board's decision, then the writ will be granted and plaintiff will face alternative service deemed suitable by his local board. In resolving this issue, the Court is constrained within a very narrow scope of review—whether or not there is any basis in fact for the Review Board's determination. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). This standard applies to in-service as well as draftee cases. Packard v. Rollins, 422 F.2d 525 (8 Cir. 1970); United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4 Cir. 1969); Hammond v. Lenfest, 398 F.2d 705 (2nd Cir. 1968); Donigian v. Laird, 308 F.Supp. 449 (D.C.Md.1969).

The Appeals Board articulated three reasons for denying the plaintiff's request for conscientious objector status:

1. "Lt. Decker's alleged conscientious objector beliefs are not truly held."

2. "[His beliefs] are not grounded in religious training and belief."

3. "Any objection to war in any form he might truly hold is based solely on sociological experiences, philosophical views, a personal moral code, and objection to the current conflict in Vietnam."

In determining whether there is any basis in fact for the classification of plaintiff, this Court may take into consideration the fact that the Appeals Board has applied an incorrect standard in making its determination. Sicurella v. United States, 348 U.S. 385, 392, 75 S.Ct. 403, 99 L.Ed. 436 (1955); United States v. Tichenor, 403 F.2d 986 (6th Cir. 1968); United States v. Carroll, 398 F.2d 651 (3rd Cir. 1968); Gatchell v. United States, 378 F.2d 287 (9th Cir. 1967).

Of the bases advanced by the Army Appeals Board in the instant case, only the first one—whether plaintiff's beliefs are truly held—is a permissible standard. The second basis advanced by the Appeals Board—that plaintiff's beliefs are not grounded in religious training and belief—is not a permissible standard for determining conscientious objection unless "religious" is evaluated in light of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). According to Seeger the test of whether the applicant's beliefs are grounded in religious training "is essentially an objective one, namely, does the claimed belief occupy the same place in the life of the objector as an orthodox belief in God holds in the life of one clearly qualified for exemption." 380 U.S. at 184, 85 S.Ct. at 863. The Appeals Board therefore when evaluating plaintiff's application was charged with determining whether his beliefs rested upon a footing essentially the same as the belief in God which characterizes an individual whose conscientious objection is rooted in orthodox religious training. The Board clearly did not take this approach.

Plaintiff was strongly influenced by Mohandas Gandhi. It was largely through plaintiff's exposure to Gandhi's writings and various interpretations thereof that he arrived at his conscientious objector position.

The Board commented on this:

"[I]t is obvious that Lt. Decker is not well read on his mentor inasmuch as Gandhi was not noted for his religion, but rather his philosophy of passive resistance to achieve select goals for his people and his country * * * and his actions often belied what he wrote in his books."

It is settled that the classifying agency cannot question the truth of an individual's concepts or the validity of his belief; nor can it reject the beliefs because they are incomprehensible. United States v. Seeger, supra, at 184–185, 85 S.Ct. 850. The Board in the instant case made a finding that they would not come to the same conclusions as plaintiff after an examination of the materials upon which he relied in arriving at his conscientious objector position. This clearly goes to the validity of plain-

tiff's beliefs and does not address itself at all to the critical question of whether the belief is in plaintiff's own scheme of things religious.

■ An examination of the reasons given by the Board in support of the finding that plaintiff's beliefs are not based on religion further emphasizes the Board's misconception of religion as it applies to conscientious objectors.

"He [Decker] freely 'admits to terminating his long standing relationship with his church * * *. Lt. Decker indicates he 'quit the Church to [sic] which I was a member because that Church does not openly oppose war, and because of other inconsistencies with my new beliefs.' The Assemblies of God Church does have a tenet clause honoring the right of the individual to hold beliefs of conscientious objection against war. By placing his 'new beliefs' in a dichotomy against what his life-long Church had advocated, further strengthens the Board's contention that any beliefs of conscience he truly holds are not based on religion."

The foregoing makes abundantly clear that the Board was considering religion in its orthodox sense. Nowhere in the plaintiff's file or in the findings of the Appeals Board is there any evidence that would support a finding that plaintiff's belief is not an essential part of a religious faith. It is not necessary that the religious belief lead inexorably to conscientious objection. It is sufficient that one have faith and by reason of that faith is opposed to participation in all wars. Bates v. Commander, 413 F.2d 475 (1st Cir. 1969); United States v. St. Clair, 293 F.Supp. 337 (E.D.N.Y.1968).

The third reason advanced by the Appeals Board in support of its denial was that any objections plaintiff might truly hold are based upon "sociological experiences, philosophical views, a personal moral code and objections to the current conflict in Vietnam."

The Supreme Court of the United States in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), clarified the scope of the exception for "sociological experiences," "philosophical views" and a "merely personal moral code."

"We certainly do not think that [the] exclusion of those persons with 'essentially political, sociological, or philosophical views or a merely personal moral code' should be read to exclude those who hold strong beliefs about our domestic and foreign affairs or even those whose conscientious objection to participation in all war is founded to a substantial extent upon considerations of public policy." 398 U.S. at 342, 90 S.Ct. at 1798.

The Court went on to identify the groups which fell squarely within the exemption as those "whose beliefs are not deeply held" and those whose objections to war rest "solely upon considerations of policy, pragmatism, or expediency." 398 U.S. at 342, 343, 90 S.Ct. at 1798.

There is nothing in the file that would support a conclusion that plaintiff's beliefs were predicated solely upon pragmatism, policy or expediency. Based on the record before it, the Board concluded that "Lt. Decker [is] an opportunist who is attempting to use the machinery of conscientious objection to avoid fulfilling his military obligation." This could certainly be construed as pragmatism. However, this conclusion rests at least in part on the Board's allegation that plaintiff did not mention his beliefs until he received his active duty orders. This is clearly not so from the record. Plaintiff relates that his commitment to his religious principles resulted from the reading of two books: The Quiet Battle: Writings on the Theory and Practice of Non-Violent Resistance, edited by Mulford Q. Sibley, and Conquest of Violence by Joan V. Bondurant. He read the books shortly after winter quarter of the 1969–70 academic year. It was three weeks after he finished them that he applied for his conscientious objector status. The application, a copy of which is in the plaintiff's file, was dated March 3, 1970. Also contained in the file was

a memorandum dated April 2, 1970, over the signature of Lt. Col. Raymond M. Vawter. This memo referred to plaintiff's application for C. O. status, as well as to a subsequent letter from plaintiff and his attorney dated March 19, 1970. Since plaintiff's orders directing him to report to active duty on May 27, 1970, are dated April 10, 1970, it is clear beyond a doubt that plaintiff's application was made more than thirty days before he received his orders.

The one permissible criteria upon which the Appeals Board based its determination will now be considered. The question before this Court is whether there is any basis in the record the Appeals Board had before it for finding that the plaintiff is not sincere in his beliefs. It does not appear to this Court that there is.

The plaintiff, it is true, is a member of the United States Army. If from this fact alone it was permissible to draw a negative inference, nobody who was in the service could get a discharge for conscientious objection. Cf. Bates v. Commander, *supra*.

The Appeals Board considered his position on violence a mere fabrication, but again they do not articulate any basis for that conclusion. Although plaintiff was unsure of what his response would be if violence were perpetrated upon him or his family, this cannot be a basis in fact for a finding of insincerity. It is well established that a belief in defending one's friends and relatives is not inconsistent with conscientious objection. United States v. Haughton, 413 F.2d 736 (9th Cir. 1969); United States v. Purvis, 403 F.2d 555 (2nd Cir. 1968), C. f., Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955).

Plaintiff was personally interviewed by three officers of the United States Army. Two of them were convinced of his sincerity. In particular, Lt. Col. M. J. Marten, who conducted a psychiatric examination of plaintiff, says:

> "Lt. Decker gave a coherent, logical history of his change of religious convictions * * *. He is sincere and unwavering in his current beliefs. He presents data that leads me to believe that there are psychodynamic explorations for his change most of which have been on an unconscious basis."

Major Fred P. Mischuk, the officer who was not convinced of plaintiff's sincerity, made the following statement in his report. It reveals the crux of Major Mischuk's skepticism.

> "The undersigned is cognizant of the fact that is is possible for the applicant to be sincere in his belief, but since there is no empirical evidence other than the assertion of the applicant himself, it is the conclusion of the undersigned that the evidence warrants a finding that the applicant is not sincere in his belief. The difficulty in reaching my conclusion was that I have no way of looking into the mind of the applicant in order to make an empirical observation as to the truth or falsity of the applicant's assertion."

Major Mischuk by his own admission had no basis in fact for doubting the sincerity of plaintiff's beliefs.

This Court finds no basis in fact for the decision of the Conscientious Objector Review Board denying plaintiff's application for conscientious objector status.

It is ordered:

That the complaint of the plaintiff, which is considered to be a petition for a writ of habeas corpus, be granted and that the plaintiff be released from the custody of the defendants.