**UNITED STATES of America,
Plaintiff,**

v.

**Wendell Asbury BRUCE, Jr., Defendant.**

**Crim. No. 70–92.**

United States District Court,
D. South Carolina,
Columbia Division.

Feb. 5, 1971.

Joseph O. Rogers, Jr., U. S. Atty. for District of South Carolina, and Marvin L. Smith, Asst. U. S. Atty., Columbia, S. C., for plaintiff.

Jack McGuinn, Columbia, S. C., for defendant.

HEMPHILL, District Judge.

On May 7, 1970, the United States instituted this criminal action by filing the return of an indictment charging in two counts that the defendant Wendell Asbury Bruce, Jr., unlawfully did violate the provisions of the Military Selective Service Act of 1967[1] and the Rules, Regulations and Directions duly made pursuant thereto, in that the defendant did wilfully fail and refuse to report for an Armed Forces physical examination on July 14, 1969, after having been ordered by his Local Selective Service Board (hereinafter called the Board) to so report, and the defendant did further wilfully fail and refuse to report for induction into the Armed Forces of the

[1]. Title 50, United States Code Appendix, Section 462.

**364**

United States on October 6, 1969 after having been ordered to so report by his Local Board.

Upon Motion of the defendant, and with the consent of the United States, the defendant waived trial by jury and requested that he be tried by the court. His request was granted. Defendant entered a plea of *not guilty* June 3, 1970, and was tried by the court without a jury, at Columbia, South Carolina, on June 22, 1970, at which time he was represented by privately employed counsel. The trial consisted principally of Exhibits and Stipulations agreed upon between the parties, there being no apparent dispute as to the facts.

The parties hereto have filed briefs setting forth their respective legal positions and it now becomes the duty of the court to make special findings of fact and state its conclusions of law in accordance with the provisions of Rule 23(c) of the Federal Rules of Criminal Procedure.[2] After the trial before the court, counsel for defendant suffered an illness which incapacitated him. The court indulged, thus the delay in bringing the matter to a conclusion.

2. *Trial Without A Jury.* In a case tried without a jury the court shall make a general finding and shall in addition on request find the facts specially. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact appear therein.

3. Title 50, United States Code Appendix, Section 451, et seq.

4. On his original classification questionnaire, mailed January 12, 1965, and returned January 22, 1965, defendant advised he was a "full time student at Dreher High School, Columbia, S. C." On a follow up Current Information Questionnaire mailed by Board No. 40 to defendant August 2, 1965, and returned August 12, 1965, defendant advised, "I am next month a full time student at the University of South Carolina, majoring in mathematics preparing for teaching and expect to receive a degree in (Spring) 1969." On August 10, 1965 he wrote advising the Board that he had requested the University of South Carolina to "send the College Student Certification—

Upon the credible evidence before it, including a copy of pertinent parts of defendant's record before Selective Service System Local Board No. 40, Columbia, S. C., and other exhibits (none of which were objected to) constituting the record before the court, and in accordance with Rule 23(c) this court publishes its:

FINDINGS OF FACT

1. On December 28, 1964, Wendell Asbury Bruce, Jr., the defendant herein, timely registered with Local Board No. 40, Selective Service System, Richland County, South Carolina, (hereinafter referred to as the Board) in accordance with the provisions of the Universal Military Training and Service Act.[3] Upon application by the defendant,[4] the Board granted him a student deferment (I-SH and II-S) from March 3, 1965 until June 17, 1969, the defendant during such period having completed a four-year college course and graduated from the University of South Carolina on May 31, 1969.

2. On June 15, 1969 the Board mailed a Current Information Questionnaire to defendant, and in reply to in-

SSS 109." On August 11, 1965, the University certified his admission (to the Board). On October 15, defendant wrote to state his 2-S classification had not changed and on October 21, 1965, the Board's minutes reflect a continuation of the 2-S classification. On April 9, 1966, defendant wrote to the Board inquiring about student's qualification test and asking for an informative pamphlet. On April 14 the Clerk of the Board responded by letter explaining a failure to take the test would not lessen defendant's chances of student classification if he maintained proper rank in his class, and enclosed a bulletin. The records reveal the classification was continued. On August 22, 1967, defendant made further inquiry; he was continued in the classification. On May ——, 1968 defendant wrote the Board for further extension of his classification, and was again continued as a student. On June 5, 1969, the University of South Carolina issued its Student Certificate to the Board, showing defendant had graduated May 31, 1969.

quiry as to present occupation, wrote "none" but advised he was qualified to teach mathematics. On June 17, 1969, he was classified I–A by the Board, which, on June 19, 1969 mailed to him his Notice of Classification (SSS Form 110) and a form giving "Advice of Right to Personal Appearance and Appeal." Insofar as the record is concerned, he did not appeal and, on July 1, 1969, the Board mailed to the defendant an Order to Report for Armed Forces Physical Examination (SSS Form 223), ordering the defendant to report for an Armed Forces physical examination on July 14, 1969.[5] Defendant. did not report as directed, nor communicate with the Board about his failure to report.

3. On August 1, 1969, the Board directed a letter to the defendant advising him that his failure to report for the physical examination made him guilty of a violation of the Military Selective Service Act of 1967 and if he did not immediately contact his Local Board he would be ordered for induction, and that failure to comply with such an Order would result in his prosecution. On September 4, 1969, the Board mailed to the defendant a Delinquency Notice (SSS Form 304), directing the defendant to report to his Local Board immediately with the notice that his failure to

so report would render him subject to imprisonment and a fine. The defendant did not respond to the letter or to the Delinquency Notice.

4. On September 22, 1969, the Board mailed to the defendant an Order to Report for Induction (SSS Form 252), ordering the defendant to report for induction on October 6, 1969, at 8:00 A.M. It was stipulated at trial that the defendant received this Order and that he did not report for induction.

5. On the afternoon of October 6, 1969, the defendant[6] placed a telephone call to personnel of the Local Board and inquired if the Local Board had received a letter from him in that day's mail. The defendant stated that the Local Board would receive a letter the following day, and he did not mention the contents of the letter. On October 7, 1969, the Board received a letter from the defendant, dated October 5, 1969 (introduced into evidence and not denied), and the envelope containing the same was postmarked "October 6, 1969 P. M." The letter set forth, *inter alia*, that the defendant refused to obey the Order to Report for Induction in that "You have no constitutional basis on which to demand my services and I have no moral basis on which to accept."[7]

---

5. At the trial it was stipulated (Government's Exhibit No. 4) that the order to report was mailed to and received by defendant.

6. The Selective Service File, accepted into evidence by stipulation, and marked Government's Exhibit No. 2, contained a "Report of Oral Information." Defendant did not deny the telephone call attributed to him in this report.

7. The entire contents of the letter is as follows:
"I received your letter informing me of the present openings in your organization and demanding that I fill one of them. You have no constitutional basis on which to demand my services and I have no moral basis on which to accept. I, therefore, refuse to obey your order of September 22.
"The United States Constitution gives the U. S. Congress the power to 'raise armies;' however the Constitution does

not provide for a peacetime draft. In United States v. Nugent [, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417] (1953), the Court ruled that the draft is constitutionally valid when it is calculated to function 'in times of peril.' Neither the Gulf of Tonkin Resolution nor Congress' approval of military appropriations is an acceptable substitute for a declaration of war by the Congress. I further conclude that lacking constitutional authority your demand would call for involuntary servitude, which is prohibited by the 13th Amendment of the Constitution—the 'Supreme Law of the Land.'
"My demanded servitude would indeed *by* involuntary because I have never indicated to you that I want a position in your organization. The fact of the matter is that an acceptance by me of even a minor job in your organization would be to disobey the major tenets of my moral code.

6. The defendant has, at no time, appealed his classification. He has, at no time, requested a special form for conscientious objectors. He has never requested a conscientious objector status, nor has he requested any status other than that assigned to him by his Local Board. From the time that the defendant was classified I–A on June 17, 1969 until after his scheduled date and hour to report for induction, the defendant did not contact his Local Board and neither he nor anyone on his behalf submitted to his Local Board any information indicating that he desired a deferment or a change in classification. He has given no explanation for his faiure to report for an Armed Forces physical examination and his failure to report for induction, other than the letter, dated October 5, 1969.

7. It was stipulated that the defendant received the Order to Report for an Armed Forces Physical Examination and that he received the Order to Report for Induction. It was further stipulated that the defendant did not report for his physical examination and he did not report for induction,[8] and that the Order to Report for Induction was not accelerated by the defendant's failure to report for his physical examination.[9]

8. There is no factual dispute in the record of this criminal prosecution. Defendant does not contend his failures were other than deliberate or willful. From the evidence before the court, direct and circumstantial, this court makes the finding of fact that the failures to report, as directed, were, beyond a reasonable doubt, deliberate and willful. The court finds as a fact that the letter of October 5, 1969 was *not* a claim for conscientious objection.

Upon these facts,[10] this court publishes its

---

"I am a follower of Jesus Christ and attempt to live by the ideals which he set up. Your organization, although mouthing many of the teachings of Jesus, is actually doing as much to discredit the philosophy of Jesus as any organization on Earth. You profess to be 'peacemakers' but your actions correct this lie. You say that you are fighting for 'freedom' when the methods that you use to 'select' your fighters is unquestionably totalitarian. You suggest that you 'love your enemies;' however Jesus did not teach us that we must 'destroy them in order to save them.' When Jesus commissioned his followers to seek to win a lost world for him, he did not intend that we seek to 'win the hearts and minds' of individuals in the way that this phrase is now interpreted.

"If our nation is 'in times of peril' then I find that it is your organization and similar organizations which have brought about most of this peril. I shall have no part in these organizations, hence you must find someone else to fill the position which you intended for me. I shall remember your job offer, and in the future if I am unemployed, in extreme poverty, and dying of hunger, then there is a possibility—although extremely slight—that I shall choose to take a position in one of your companies."

8. Stipulation #5 on Government's Exhibit #4.

9. Stipulation #6 on Government's Exhibit #4.

10. On December 10, 1970 counsel for defendant wrote the court a letter and enclosed certain supposed material relating to the subject. If the material were competent evidence as to the real issue it would be considered, despite the unprofessional departure. It is not competent, but the Clerk was ordered to put it into the file for defendant's protection.

The letter of counsel reads:

December 10, 1970

"Dear Judge Hemphill:

I first want to thank you for your very kind and solicitous remarks concerning my recent illness. I am very happy to report that everything appears to be once more normal.

I do also thank you for permitting this last two days on the Bruce Brief.

I ask Your Honor, because of the unusual amount of time passing since the filing of the original Brief, to please once more study that as I consider it essential as well as the enclosed Brief in somewhat more detail.

Also enclosed is a dossier of correspondence between the accused and Rev. Richard Brannon, a rather noted theologian and writer for the State Newspaper, dating back almost three years and to treat this as a formal request, by copy hereof to the District Attorney, for agreed upon evidence and,

## CONCLUSIONS OF LAW

A. This court has jurisdiction of the cause and the subject matter. 18 U.S.C. § 3231.[11]

■ B. The court determines as a matter of law that defendant did willfully, knowingly and unlawfully violate the provisions of the Military Selective Service Act of 1967,[12] and the Rules, Regulations and Directives duly made pursuant thereto as to both counts of the indictment. He knowingly, willfully, did fail and refuse to report for the required physical examination on July 14, 1969, after having been ordered to do so by Local Board No. 40. Likewise, he did knowingly and willfully fail and refuse to report for induction as ordered by Local Board No. 40.

■ C. Had defendant met the test (standard) of a conscientious objector as propounded in United States v. Seeger[13] (1965), 380 U.S. 163, 176, 85 S.Ct. 850, 859, 13 L.Ed. 733, repeated and followed in United States v. Vlasits (1970), 422 F.2d 1267 (4th Cir.), such would not be a defense in this action. Initially, the facts reveal that for four years, eleven months and seven days (December 28, 1964 to October 4, 1969) he remained silent as to his conscience or his objection. During such period his communications with the Local Board No. 40 never, at one time, claimed classification as a conscientious objector. More than three months elapsed *after* ordered to report for physical examination before the letter was written. After his induction, he wrote. At such late date Local Board No. 40 was not required to rescind its order to report.

United States v. Helm, 386 F.2d 434 (4th Cir. 1967). Section 1625.2 of the Selective Service Regulations[14] provides that once an Order to Report for Induction has been mailed to a registrant the classification of the registrant shall not be reopened "unless the Local Board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

■ D. The decided cases are consistent in holding that the defendant must pursue his administrative remedies within the Selective Service System and that a registrant is not entitled to have his Local Board reopen his classification where no claim is made until after he has failed to report or submit to induction. In United States v. Irons, 369 F. 2d 557 (6th Cir. 1966), the defendant was convicted of a wilful failure to report for an armed forces physical examination and a wilful failure to report for induction. The defendant had submitted information to his Local Board which would indicate that he was a conscientious objector. Upon receiving his Order to Report for a Physical Examination, he wrote his Local Board a letter which could be construed as stating that he was a conscientious objector. Upon appeal, the defendant contended that the request made in his correspondence with his Board discloses that he should have been classified as a conscientious objector. The court there said:

Assuming that appellant could nonetheless qualify for the conscientious-objector classification (I–O) under the *Seeger* definition of "Supreme

alternatively, that Bruce be permitted to swear that this is his evidence as to his defense as a conscientious objector. In view of the last paragraph of the argument herewith presented, we are hopeful that an order may not be necessary as requested by the Court."

11. The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

12. 50 U.S.C.Appendix 462.

13. "The test might be stated in these words:
A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption carries within the statutory definition."

14. 32 C.F.R. § 1625.2.

Being", he still confronts the fact that he emphatically waived any such classification by refusing to claim the exemption. (See: United States v. Schoebel, 201 F.2d 31, 32 (7th Cir. 1953); United States v. Rubinstein, 166 F.2d 249, 257–258 (2d Cir. 1948).

Not only did appellant spurn all administrative remedies available to him, including appeal (cf. Maddox v. United States, 264 F.2d 243 (6th Cir. 1959); he also refused to report for, or submit to a physical examination. Conscientious objectors are not excused from a physical examination. Indeed, no registrant is, and for good reason. (See Selective Service Regs. § 1628.11, 32 C.F.R. § 1628.11 (1965 Supp.)).

In United States v. Stoppelman, 406 F.2d 127 (1st Cir. 1969), the court stated:

This brings us to the post-reporting date request for a Conscientious Objector form. While Courts have differed in their willingness to consider conscientious objector claims filed after an order to report but before refusal to report, see n. 7, there is virtual unanimity among the reported decisions in refusing to require boards to recognize post-induction date claims. Such is the clear, if not explicit, rationale of United States v. Stafford, 389 F.2d 215 (2d Cir. 1968); see also United States v. Gearey, 368 F.2d 144 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967); Palmer v. United States, 401 F.2d 226 (9th Cir. 1968); Davis v. United States, 374 F.2d 1 (5th Cir. 1967); Keene v. United States, 266 F.2d 378, 384 (10th Cir. 1959).

E. In DuVernay v. United States, 394 F.2d 979 (5th Cir. 1968), affirmed 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306, the Court's answer to a similar question was "Since appellant failed to take administrative steps available to him before attempting a collateral attack on his classification in a prosecution for refusing to submit to induction, his contentions before this Court are foreclosed as a matter of law." The cases are uniform in holding that a registrant must make a claim for a change in classification prior to his date of induction.[15]

The defendant also raises as a defense that the Government in the proof of its case failed to show that the defendant was called for induction in proper order.

■ F. Section 1631.7 of the Selective Service Regulations[16] provides that the oldest registrants shall be called first. In this action, the United States offered into evidence the Delivery List[17] wherein the defendant was called for induction. The fifth and sixth digits of each registrant's Selective Service number reflect the registrant's birth date. The aforesaid Delivery List reflects that of the 16 registrants called for induction on October 6, 1969, the defendant was the fourth oldest of such group. As the defendant had been deferred for over four years in order to allow him to attend college, it appears that he had attained an age in excess of the ages of registrants who were then being ordered for induction. In any event, the decided cases are consistent in holding that it is not necessary for the Government to show in its case in chief that the defendant was called for induction in proper order. If the defendant contends that the Selective Service Regulations were not met and he was improperly called for induction, he must make some affirmative showing that the call was invalid. See United States v. Sandbank, 403 F.2d 38 (2nd Cir. 1968), cert. denied 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d

---

15. Blades v. United States, 407 F.2d 1397 (9th Cir. 1969); Brown v. United States, 409 F.2d 1354 (9th Cir. 1969); United States v. Garland, 364 F.2d 487 (2nd Cir. 1966), cert. denied 385 U.S. 978, 87 S.Ct. 521, 17 L.Ed.2d 440; and Palmer v. United States, 401 F.2d 226 (9th Cir. 1968).

16. 32 C.F.R. § 1631.7.

17. Introduced without objection and marked Government's Exhibit #3.

562; Greer v. United States, 378 F.2d 931 (5th Cir. 1967); Lowe v. United States, 389 F.2d 51 (5th Cir. 1968); and Pigue v. United States, 389 F.2d 765 (5th Cir. 1968).

The court finds and concludes that the Local Board acted within the proper Selective Service Regulations in ordering the defendant to report for an armed forces physical examination and in ordering the defendant to report for induction. It is further concluded that the defendant was not legally justified in failing and refusing to report as ordered. As the defendant admits receiving the various Orders to report; as the defendant admits that he failed to report as ordered; and as the court finds that the failures to report were deliberate, wilful and unlawful, the court finds and concludes that the defendant is guilty as charged in both counts of the Indictment filed in this action.

And it is so ordered.